PATRICIA A. WICKLIFFE, as Special Administratrix of the Estate of ANGELA R. WICKLIFFE, Deceased, Appellant, v. SUNRISE HOSPITAL, INC., a Nevada Corporation, Respondent.

No. 18737

December 30, 1988                    766 P.2d 1322

[Rehearing denied March 8, 1989]

*J. R. Crockett, Jr.* and *James Lavelle,* Las Vegas, for Appellant.

*Barker, Gillock, Koning, Brown & Earley,* Las Vegas, for Respondent.

---

[5]The Honorable E. M. Gunderson, Chief Justice, did not participate in the decision of this appeal.

## OPINION

*Per Curiam:*

At 7:40 a.m. on December 7, 1978, Angela Wickliffe, a healthy thirteen-year-old, underwent an operation at Sunrise Hospital to correct the curvature or scoliosis of her spine. The operation was uneventful and successful. At approximately 12:30 p.m., Angela suffered a respiratory arrest. Despite the efforts of the hospital staff to revive her, Angela never regained consciousness. She died from brain damage resulting from a lack of oxygen on December 19, 1978.

Patricia and John Wickliffe filed suit against Sunrise for the wrongful death of their daughter. The Wickliffes alleged negligence of the hospital's nursing staff who cared for Angela following her surgery.

As this case reaches us for a second time, a complete summary of the facts is available in Wickliffe v. Sunrise Hospital, 101 Nev. 542, 706 P.2d 1383 (1985)· (*Wickliffe I*). After a jury verdict in favor of Sunrise Hospital in the first medical malpractice action, Patricia Wickliffe appealed to this court. We reversed and remanded the case for a new trial, with express instructions for the district court. *Id.,* 706 P.2d at 1383.

Specifically, we ordered the district court to apply a national standard of hospital care at the second trial. *Wickliffe,* 101 Nev. at 548, 706 P.2d at 1388. Accordingly, we directed the trial judge to admit the testimony of Carolyn Sandler, Wickliffe's expert witness on national hospital standards. *Id.,* 706 P.2d at 1388. Furthermore, we ordered the district court to admit the testimony of former Sunrise nursing supervisor Marjorie Woods, as well as Wickliffe's exhibits 12 and 13, all excluded at the first trial. *Wickliffe,* 101 Nev. at 549-550, 706 P.2d at 1388-1389.

After a second trial, a jury again found for Sunrise, and again Wickliffe appeals. She contends that the district court erred by not adhering to the law of the case during the second proceeding. We agree, and again reverse and remand for a new trial.

Wickliffe argues that the district court erred when, during the second trial, it refused to properly qualify nurse Carolyn Sandler as an expert witness. In *Wickliffe I,* this court reviewed Ms. Sandler's qualifications and found her qualified as an expert to state an opinion as to the national standard of nursing care. *Wickliffe,* 101 Nev. at 546-548, 706 P.2d at 1386-1388. We held that Ms. Sandler could testify upon remand. *Wickliffe,* 101 Nev. at 548, 706 P.2d at 1388. Thus, Wickliffe argues that the lower court violated the law of the case by failing to properly qualify Ms. Sandler.

However, the record on appeal indicates that the district court initially qualified Ms. Sandler as an expert witness. After Wickliffe laid a foundation for her testimony, the court held that "[i]t's obvious that there are some infirmities but I think that those merely go to the weight rather than admissibility counsel. I think there is a sufficient foundation."

Wickliffe specifically objects to the trial judge's subsequent comments to the jury regarding expert witnesses in general. The judge referred to the parties' experts as "these 'so-called experts.'"[1]

___

[1]After he overruled Sunrise's objection to Ms. Sandler's testimony for lack of foundation, the judge told the jury that:

> I'm going to instruct you as to these "so-called experts" that you'll be listening to and the rule will be in the end that you're to determine whether they're experts. I don't determine that fact. The only thing I determine is just is there sufficient foundation to get over, that they have a little bit more knowledge than someone else and then it's up to you to determine whether or not you will or will not consider them an expert, that's up to you. And you're gonna be comparing so-called expert testimony, so that's why I asked you to pay specific attention to the witnesses when they come forward, cause you're gonna have to make that determination. But I'll give you the appropriate . . . statutory charge on how to view "expert testimony," you may not think that they're experts but that's up to you, it's you're [sic] determination. I'm

Wickliffe argues that the judge's comments indicate that the district court never actually qualified Ms. Sandler as an expert. Sunrise responds that by permitting witnesses to testify as experts, the trial judge, by inference, rules that they are qualified. Grohusky v. Atlas Assurance Company, 408 P.2d 697, 701 (Kan. 1965). However, in the absence of an admission or waiver by the adverse party, courts should expressly find that the witness is qualified. Pridgen v. Gibson, 139 S.E. 443, 444 (N.C. 1927).

In the instant case, rather than expressly finding Ms. Sandler qualified, the district court subverted this court's direction on remand. The trial judge's remarks demeaned the credibility and expertise of plaintiff's expert witness, and thereby undermined the mandate of *Wickliffe I* which ordered the district court to admit Ms. Sandler's expert testimony.

When an appellate court states a principle or rule of law necessary to a decision, the principle or rule becomes the law of the case and must be followed throughout its subsequent progress, both in the lower court and upon subsequent appeal. LaBue v. State ex rel. Dep't Hwys., 92 Nev. 529, 532, 554 P.2d 258, 260 (1976). Upon remand, the lower court can take only such actions as conform to the judgment of the appellate tribunal. *Id.*, 554 P.2d at 260. Therefore, in this dispute, the district court's remarks violated the law of the case and constituted reversible error. *Id.*, 554 P.2d at 260.

In *Wickliffe I,* we held that the district court abused its discretion at the first trial by excluding Wickliffe's exhibits 12 and 13. 101 Nev. at 549-550, 706 P.2d at 1389. Exhibit 12 was a photocopy of Angela Wickliffe's hospital records except for pages 114 and 123. Sunrise's custodian of records mailed the pages comprising exhibit 12 on December 18, 1978, pursuant to a subpoena received that day. *Id.*, 706 P.2d at 1389.

Exhibit 13 consisted of pages 114 and 123. The hospital mailed these pages on December 19, 1978, pursuant to the same subpoena. Pages 114 and 123 were the only pages in Angela's

---

not saying that they are or they're not, but they are entitled to go ahead and to give you certain opinions and then you can either take 'em at their value or whatever value you believe they may be; you may disregard 'em if you don't think that they're worth anything or you may regard 'em if you do, but that's, that's your prerogative and I don't want you to get the impression that by allowing these experts to testimony [sic]—that you're bound to follow their testimony.

records concerning her brief stay on the surgical floor following her surgery. These pages, which overlap in time, record the events surrounding Angela's respiratory arrest. The record does not reveal where pages 114 and 123 were on December 18, or why they were not mailed along with the remainder of Angela's records. *Id.*, 706 P.2d at 1389.

Wickliffe sought to admit exhibits 12 and 13 in order to bring to the jury's attention questions about how Sunrise processed Angela's records. On remand, we ordered the district court to admit them. *Wickliffe,* 101 Nev. at 550, 706 P.2d at 1389.

Accordingly, at the second trial, the district court admitted exhibits 12 and 13. During his closing argument, Wickliffe's counsel attempted to make inferences as to why Sunrise treated pages 114 and 123 differently than the remainder of Angela's records. However, upon Sunrise's objection, the district court ordered counsel to avoid that subject.

Wickliffe argues that the district court's order violated the law of *Wickliffe I.* In that decision, we noted that

> [T]he fact that pages 114 and 123 were separated from the rest of her hospital records suggests that the two most important pages were somehow treated differently. Inferences arising from these facts were highly relevant. The jury should have been allowed to consider them when evaluating the contents of pages 114 and 123. *Wickliffe,* 101 Nev. at 550, 706 P.2d at 1389.

Thus, Wickliffe contends that the district court's refusal to allow counsel to argue these inferences contravened the law of the case. We agree. Sunrise argues that the district court properly limited Wickliffe's closing argument because the evidence presented at trial did not support counsel's inferences. Courts will ban closing arguments which go beyond the inferences the evidence in the case will bear. P. Rothstein, *Evidence, State and Federal Rules* 39 (1981). However, in *Wickliffe I,* we held that inferences arising from exhibits 12 and 13 were highly relevant. 101 Nev. at 550, 706 P.2d at 1389. Therefore, upon remand, Wickliffe's evidence supported the inferences which counsel tried to make during his closing argument.

Sunrise also argues that even if the district court erred, it was a harmless error which had no bearing on the outcome of the trial. However, a trial court has no authority to deviate from the mandate issued by an appellate court. Briggs v. Pennsylvania R. Co., 334 U.S. 304, 306 (1948). Proceedings contrary to the mandate are null and void, and failure to conform to the ruling justifies a new review. *Id.* The appellate court may enforce compliance with its mandate which the trial court has failed to

obey, or has misconstrued. B. & O. R. CO. v. United States, 279 U.S. 781, 785 (1929).

Moreover, consideration of the inferences advanced by Wickliffe's counsel might have had an impact on the jury's decision. Therefore, the district court's restraint on counsel's argument was prejudicial error and warrants reversal.

At the first trial, the district court gave Wickliffe's jury instruction 13B which provided: "In determining the adequacy of the care rendered to its patient, you may consider the defendant's own standards and whether or not the defendant conformed to its own standards." At the conclusion of the second trial, the court refused the same instruction when proffered by the plaintiff.

Sunrise maintained its postoperative procedures in a rolodex available for review on each ward of the hospital. The pertinent rolodex card required the taking of vital signs every fifteen minutes for the first hour after a patient's surgery. Wickliffe contends that the omitted instruction was fundamental to her argument that the violation of Sunrise's procedure could be evidence of negligence. Therefore, she argues that the court's refusal to give the instruction was reversible error.

We agree. "Each party to a lawsuit is entitled to have the jury instructed on all of his theories of the case that are supported by the pleadings and the evidence." Rocky Mt. Produce v. Johnson, 78 Nev. 44, 52, 369 P.2d 198, 202 (1962).

Sunrise was accredited by the Joint Commission on Accreditation of Hospitals (JCAH) which institutes national standards to which all hospitals seeking accreditation must conform. *Wickliffe,* 101 Nev. at 548, 706 P.2d at 1387. According to Ms. Sandler's testimony, the national standard of nursing care in 1978 required that a nurse observe a postoperative patient and take the patient's vital signs every fifteen minutes for the first hour the patient is back on the surgical floor.

Ms. Sandler noted that exhibit 2B (Sunrise's rolodex cards containing postoperative care procedures) represented an adequate standard of postoperative care. However, she observed that since a nurse's aide monitored Angela Wickliffe's vital signs only once during her first hour after leaving the recovery room, the nurses involved failed to meet that standard.

Thus, the evidence indicated that Sunrise's procedures for postoperative care conformed to the national standard, but the hospital's personnel did not perform consistently with that standard. Therefore, Wickliffe was entitled to a jury instruction stating that the jurors could consider whether or not Sunrise conformed to its own standards. Accordingly, the district court erred by refusing to give instruction 13B.

In *Wickliffe I,* we noted that "[i]t is no longer justifiable, if indeed it ever was, to limit a hospital's liability to that degree of care which is customarily practiced in its own community." *Wickliffe,* 101 Nev. at 548, 706 P.2d at 1388 (quoting Dickinson v. Maillard, 175 N.W.2d 588, 596 (Iowa 1970)). Today, Nevada hospitals must conform to a nationwide standard: that degree of skill and care expected of a reasonably competent hospital in the same or similar circumstances. *Id.,* 706 P.2d at 1388.

Nevertheless, upon remand, Sunrise called nurse Doris Ravish to provide expert testimony on its behalf. During direct examination, Ms. Ravish testified that standards of nursing care differ from community to community. Wickliffe argues that because Ms. Ravish's testimony contradicts the law of *Wickliffe I,* the district court erred by allowing her testimony.

We disagree. In *Wickliffe I,* we did not intend to suggest that the quality of hospital and nursing care available to the public will never differ from one community to the next. Rather, we explained that we will hold hospitals liable, not to their local community standard of care, but to the standard of care available in a competent hospital operating under similar circumstances. We recognize that the circumstances under which our hospitals function may vary significantly. Therefore, Ms. Ravish's testimony did not contradict the law of *Wickliffe I.*[2]

Finally, Wickliffe argues that "whether consciously or unconsciously," the trial court judge undermined plaintiff's case and cannot fairly deal with the matters involved. Therefore, she argues that we should remand the case to a different court for any further proceedings. We agree, and direct that on remand, the case shall be assigned to a different district court judge. Nev. Const. art. 6, § 19(1).

In light of our disposition, we need not reach appellant's remaining contentions. Accordingly, we reverse the district court's judgment and remand the case for a new trial.[3]

---

[2]We note that the district court attempted to resolve possible confusion as to the applicable standard of care via its jury instructions. The trial judge informed the jury that hospitals must employ that degree of skill and care expected of a reasonably competent hospital in the same or similar circumstances. He emphasized that every hospital's level of care must conform to this national standard. Moreover, the district court instructed the jury that nurses must exercise that degree of skill and care possessed by ordinarily careful and skillful nurses at the same time and under similar circumstances. These instructions corresponded to the standards defined in *Wickliffe I. Wickliffe,* 101 Nev. at 548, 706 P.2d at 1388. Upon remand, we direct the district court to give these same instructions to the jury.

[3]THE HONORABLE E. M. GUNDERSON, Chief Justice, did not participate in the decision of this appeal.