SANFORD AND RITA HORNWOOD, Appellants, v. SMITH'S FOOD KING NO. 1 and SMITH'S MANAGEMENT CORPORATION, Respondents.

No. 21084

March 6, 1991                          807 P.2d 208

---

[Rehearing denied May 2, 1991]

*Marquis, Haney & Aurbach,* Las Vegas, for Appellants.

*Jolley, Urga, Wirth & Woodbury,* Las Vegas, for Respondents.

# OPINION

*Per Curiam:*

## THE FACTS

In June 1975, respondent, Smith's Food King No. 1 (Smith's), executed an agreement to lease 28,000 square feet of space in a 145,000 square foot shopping center now owned by Sanford and Rita Hornwood (Hornwoods).[1] The thirty year lease required Smith's to pay approximately $92,398.00 in minimum annual rent as well as "percentage rent" calculated at 1.5 percent of sales generated by the store during the previous calendar year, less the aggregate amount of annual minimum rent paid.[2] On November 1, 1986, Smith's ceased its grocery operations at the Hornwoods' shopping center. Thereafter, the Hornwoods did not attempt to evict Smith's, and Smith's retained possession of the demised premises while continuing to pay minimum rent.[3]

The Hornwoods filed a suit approximately one month after Smith's ceased its operations in their shopping center, alleging, among other things, that Smith's had breached an implied covenant of continuous operation when it vacated the premises, and that this breach had caused the shopping center to decline $2,500,000.00 in value, because Smith's was the shopping center's "anchor tenant."[4]

---

[1] The lease agreement was executed by the Hornwoods' predecessor in interest.

[2] Smith's paid percentage rent in 1979 and in 1980, but because of insufficient sales volume, paid only the minimum annual rent thereafter.

[3] The Hornwoods argue that when Smith's ceases its operations in leased premises, they seldom turn the space back over to the landlord for fear that the landlord will lease to another supermarket. Rather, Smith's retains possession and either leaves the space empty or finds non-grocery store subtenants.

[4] As Emanuel Halper points out in SHOPPING CENTER AND STORE LEASES, § 9.02(b) (1989), at page 257:

> Shopping center landlords who discover that a tenant has stopped doing business are profoundly disappointed. A vacant store of any kind,

At the conclusion of a bench trial, the trial court agreed that Smith's had breached an implied covenant of continuous operation when it vacated the premises; however, the trial court concluded that the Hornwoods were not entitled to damages for this breach because: (1) Smith's had continued to pay minimum rent; (2) the evidence did not support damages for percentage rent; and (3) "[a]s a matter of law, diminution of property value to the shopping center as a result of the closure of Smith's . . . [was] not compensable due to the unforeseeable nature of such damages."

The Hornwoods appealed the trial court's ruling, and this court partially reversed, holding that the diminution of value of the Hornwoods' shopping center caused by Smith's breach of the implied covenant of continuous operation was not unforeseeable as a matter of law. *See* Hornwood v. Smith's Food King, 105 Nev. 188, 772 P.2d 1284 (1989). This court found the remaining issues raised in the Hornwoods' appeal to be without merit. *Id.* at 192, 772 P.2d at 1287.

The matter was remanded to the district court for a determination of damages for the diminished value of the shopping center. *Id.* However, before the district court had an opportunity to consider this issue, the Hornwoods petitioned the Nevada Supreme Court for a rehearing, asserting that the measure of damages in *Hornwood v. Smith's Food King* did not fit the case, and that *Hornwood v. Smith's Food King* should be modified to allow damages for lost future "percentage rent." This court denied the petition for rehearing for procedural reasons. *See* Order Denying Rehearing, Case No. 18980, filed on June 23, 1989.

On September 5, 1989, the Hornwoods filed their motion for entry of judgment with the district court, seeking $1,425,000.00 in damages. At the Hornwoods' request, the trial judge did not conduct an evidentiary hearing, but instead relied upon the evidence produced at the trial to assess damages. Thereafter, the trial court awarded the Hornwoods $5,000.00 for the diminished value of their shopping center, without prejudgment interest, and assigned to the Hornwoods the rents from two subleases secured by Smith's for Smith's shopping center space. The trial court also awarded the Hornwoods $12,916.60 in costs and $50,000.00 in attorney's fees. This appeal followed.

---

whether rented or not, has a depressing effect upon a shopping center. Shopping center merchants depend upon each other's presence to draw customers to the shopping center. When one of them stops doing business, the draw is reduced. When an anchor tenant, such as a department store or a supermarket, stops conducting business, the aroma of death may permeate the atmosphere.

## COMPENSATORY DAMAGES

Compensatory damages are awarded to make the aggrieved party whole and, where contracts are involved, these damages should place the plaintiff in the position he would have been in had the contract not been breached. Dalton Properties, Inc. v. Jones, 100 Nev. 422, 425, 683 P.2d 30, 31 (1984). The primary concern in this case then, asks whether the Hornwoods were adequately compensated for their loss.

The Hornwoods argue the district court damage award for the diminished value of their shopping center was inadequate, and insist that to be adequately compensated for their loss, they should receive: (1) $1,425,000.00 for the diminished value of the shopping center; (2) $301,354.00 for lost "percentage rent" on the contract; and (3) $258,000.00 for lost rent and other expenses incurred on other tenancies in the shopping center. We will assess each claim for damages separately.

### A. Damages for Diminished Value.

In the first appeal of this case, we remanded the matter back to the district court and cited Washington Trust Bank v. Circle K Corp., 546 P.2d 1249 (Wash.Ct.App. 1976), for the appropriate measure of damages. *Washington Trust* assessed damages by the difference between the "present worth of the property with the lease less the present worth of the property without the lease." *Id.* at 1252. Upon remand, the district court below evidently felt compelled to ignore the existence of Smith's lease on the subject property in applying the *Washington Trust* damage formula. We conclude that this was a misapplication of the *Washington Trust* measure of damages in light of the facts of this case.

### 1.

"When an appellate court states a principle or rule of law necessary to a decision the principle or rule becomes the law of the case and must be followed throughout its subsequent progress, both in the lower court and upon subsequent appeal." Wickliffe v. Sunrise Hospital, 104 Nev. 777, 780, 766 P.2d 1322, 1324 (1988). However, "[i]n law as elsewhere words of many-hued meanings derive their scope from the use to which they are put." Powell v. U.S. Cartridge Co., 339 U.S. 497, 529 (1950) (dissenting opinion). The clear intent of *Washington Trust,* as well as our prior ruling in this matter, was to place the aggrieved party in the position they would have been in had the breach of contract not occurred.

After it assumed the nonexistence of Smith's lease on the subject property, the district court accepted an appraisal that likewise assumed the nonexistence of Smith's lease. Following these assumptions, the property was valued based upon market value rents that the Hornwoods could obtain on the property if Smith's lease did not exist. Thereafter, the Hornwoods' damages for the diminished value of the shopping center were set at $5,000.00.

However, the market value rents used to reach this damage award were substantially greater than the minimum rent Smith's continued to pay the Hornwoods on Smith's lease because Smith's had executed their lease years earlier and paid lower than average rents as an anchor tenant. Obviously, the Hornwoods could not mitigate their damages by releasing the subject property for its market value because of Smith's lease. Thus, to make the facts of this case fit the district court's assumption that Smith's lease did not exist, the district court ordered Smith's to assign its subtenant rents on the property over to the Hornwoods. This, however, did not make the facts of the case fit the district court's assumptions.

First, the Hornwoods are not guaranteed market value rents on the subject property for the duration of Smith's lease: the Hornwoods do not have privity of contract or privity of estate with Smith's subtenants and, accordingly, must depend upon Smith's to maintain current and future subleases on the property. We conclude it would be improper to force the Hornwoods into such a precarious position. Second, the district court order awarding damages to the Hornwoods does not guarantee the quality of future subleases on the subject property, or even require Smith's to sublease this property upon the termination of current subleases. Finally, questions arise regarding Smith's obligations to: (1) collect rents from subtenants; (2) cure future injury to the property caused by the subtenants; or (3) resolve disputes between subtenants and the Hornwoods. We believe the Hornwoods are justified in their concern that Smith's may consider itself relieved of all future liability if the district court's order is affirmed.

In short, we conclude that the district court damage award is mired in confusion and illusory assumptions that beg for future litigation and court intervention. We likewise conclude that the district court damage award does not guarantee the accuracy of the court's assumption that the Hornwoods would continuously receive market value rents on the subject property for the duration of Smith's lease. Accordingly, we believe the district court should have interpreted the *Washington Trust* measure of damages to fit the facts of this case, rather than manipulating the facts of the case to fit the damage formula.

2.

It is clear from our prior ruling that the Hornwoods were to receive adequate compensatory damages upon remand. Therefore, the district court should have construed the *Washington Trust* measure of damages as the difference between the value of the shopping center immediately before and immediately after the breach that caused the injury. *See* 22 AM.JUR.2D *Damages* § 401 (1988). In other words, damages in this case should be assessed as the present worth of the property with the anchor tenant less the present worth of the property without the anchor tenant. Further, we define "without the anchor tenant" in this opinion to exclude any value the shopping center may derive from Smith's current subtenants, or from any subtenants Smith's acquires for the demised premises in the future. We so define "without the anchor tenant" because of uncertainties created by Smith's breach of contract and to insure the Hornwoods adequate compensatory damages.

Therefore, we reverse the district court's damage award and assignment of subtenant rents and remand this matter back to the district court for a recalculation of damages for the diminished value of the shopping center.[5]

B. Lost Percentage Rents.

Next, Hornwoods assert that they are also entitled to $301,354.00 in lost percentage rents. We disagree.

Once a court of competent jurisdiction decides an issue between the same parties in the same cause of action, the relitigation of that issue is barred by the doctrine of *res judicata*. Alitalia-Linee Aeree v. District Court, 92 Nev. 638, 640, 556 P.2d 544, 545 (1976). After the trial, the district court concluded that the Hornwoods were not entitled to damages for lost percentage rents. This court affirmed this finding in the first appeal. *Hornwood v. Smith's Food King,* 105 Nev. at 192, 772 P.2d at

---

[5]We should note for clarity that any future damage award for the diminished value of the shopping center should not include an assignment of rents from any subtenants Smith's has or will secure on the subject property. Therefore, Smith's can attempt to recoup some of the amounts it pays for any damage award by maintaining subtenants for its lease in the shopping center *and keeping the rents received from its subtenants.* Nothing in this opinion should be construed, however, to release Smith's from its obligation to pay minimum rent on its lease with the Hornwoods.

1287. Therefore, we rule that the Hornwoods are barred from relitigating the issue of lost percentage rents.

### C. Lost Rent on Neighboring Tenancies.

Next, the Hornwoods argue that the diminished value of their shopping center will cause other tenants therein to default on their leases, and will cause future tenants to negotiate lease contracts for less rent. Accordingly, the Hornwoods argue they are entitled to $258,000.00 in damages for lost rent from other tenants and expenses associated with that lost rent. We disagree.

These damages do not arise from a breach of Smith's covenant to pay rent; rather, these damages will result from the injury to the property, and will be included in any damages the Hornwoods receive for the diminished value of the shopping center. If the Hornwoods invest the damage award they receive for the diminished value of their shopping center back into the center, they should be in a position similar to their position prior to the breach of contract, and the rents from neighboring tenants in the shopping center should not decrease.[6]

### ATTORNEY'S FEES

The Hornwoods argue that the district court abused its discretion in awarding only $50,000.00 in attorney's fees. The Hornwoods submitted affidavits and time sheets demonstrating that they had paid over $130,000.00 in attorney's fees, and accordingly, they seek an award for that amount in this appeal.

Generally, in calculating attorney's fees, the court should consider the qualities of the advocate, the character of the work to be done, the work actually performed by the lawyer, and the result. Brunzell v. Golden Gate National Bank, 85 Nev. 345, 349, 455 P.2d 31, 33 (1969). However, unless there is a manifest abuse of discretion, a district court award of attorney's fees will not be overturned on appeal. County of Clark v. Blanchard Constr. Co., 98 Nev. 488, 492, 653 P.2d 1217, 1220 (1982). We conclude that the district court did not manifestly abuse its discretion in its award of attorney's fees to this point.[7]

---

[6]However, this does not preclude the district court's consideration of damages for lost rent from neighboring tenants that accrued during the pendency of this litigation.

[7]Of course, additional attorney's fees may be appropriate in light of the added legal work needed to secure an adjustment in the damage award.

## COSTS

Recoverable litigation costs are governed by the law in effect at the *time of judgment.* Farmers Home Mutual Ins. v. Fiscus, 102 Nev. 371, 376-377, 725 P.2d 234, 237 (1986). The Hornwoods filed a memorandum of costs and disbursements, but the district court refused to award $7,343.00 of the costs requested by the Hornwoods because this amount represented expenses for photocopies, long distance telephone calls, travel, lodging and other expenses. All of these expenses are recoverable under a 1989 amendment to NRS 18.005, which was in effect at the time of judgment.[8] Therefore, the Hornwoods are entitled to any amounts paid for these costs.

## PREJUDGMENT INTEREST

Finally, the trial court refused to award prejudgment interest to the Hornwoods. We affirm the district court on this issue.

Prejudgment interest on a damage award is only allowed where the damage award is known or ascertainable .at a time prior to entry of judgment, either by reference to amounts fixed by the contract, or from established market prices. Jeaness v. Besnilian, 101 Nev. 536, 541, 706 P.2d 143, 147 (1985). Neither the contract nor established market prices render the damage awards in this case sufficiently known and ascertainable to justify prejudgment interest.

## CONCLUSION

In sum, while we affirm the district court's decision regarding lost percentage rents, lost future rents, and prejudgment interest, we nonetheless find that the district court failed to properly assess

---

[8]NRS 18.005 currently provides in relevant part:

18.005 "Costs" defined. For the purposes of NRS 18.010 to 18.150, inclusive, the term "costs" means:
. . . .
11. Reasonable costs for telecopies.
12. Reasonable costs for photocopies.
13. Reasonable costs for long distance telephone calls.
14. Reasonable costs for postage.
15. Reasonable costs for travel and lodging incurred taking depositions and conducting discovery.
16. Any other reasonable and necessary expense incurred in connection with the action.

Prior to the 1989 amendment, NRS 18.005 did not define the foregoing items as "costs."

the Hornwoods' damages for the diminished value of the shopping center. We likewise conclude that the district court erred in its calculation of costs. Accordingly, we remand this matter for further proceedings.