# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| CRYSTAL BAY LENDING PARTNERS, LLC, A FLORIDA LIMITED LIABILITY COMPANY,<br>Appellant/Cross-Respondent,<br>vs.<br>JMA BOULDER BAY HOLDINGS, LLC,<br>Respondent/Cross-Appellant. | No. 69386 |
| CRYSTAL BAY LENDING PARTNERS, LLC, A FLORIDA LIMITED LIABILITY COMPANY,<br>Appellant,<br>vs.<br>JMA BOULDER BAY HOLDINGS, LLC, AS SUCCESSOR IN INTEREST TO OSM-REO BOULDER BAY, LLC,<br>Respondent. | No. 70000 |
| CRYSTAL BAY LENDING PARTNERS, LLC, A FLORIDA LIMITED LIABILITY COMPANY,<br>Appellant,<br>vs.<br>JMA BOULDER BAY HOLDINGS, LLC, AS SUCCESSOR IN INTEREST TO OSM-REDO BOULDER BAY, LLC, A MINNESOTA LIMITED LIABILITY COMPANY,<br>Respondent. | No. 70125 |

FILED

JUL 27 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal and cross-appeal from a final judgment and district court order awarding prejudgment interest and attorney fees and

17-24999

costs in a breach of contract and declaratory judgment action. Second Judicial District Court, Washoe County; Patrick Flanagan, Judge.

In June 2007, non-party Marshall Financial Group, LLC (Marshall) and appellant/cross-respondent Crystal Bay Lending Partners, LLC (Crystal Bay) loaned non-party Boulder Bay, LLC (Boulder Bay) $36,000,000 and $9,000,000 respectively to redevelop the Tahoe Biltmore, a hotel-casino. These loans were secured by deeds of trust on the property and by several personal guaranties.

As a result of these loans, Marshall and Crystal Bay entered into an Intercreditor and Subordination Agreement, which subordinated Crystal Bay's loan (hereinafter, the junior loan) to Marshall's loan (hereinafter, the senior loan). The Intercreditor Agreement prohibits Crystal Bay from accepting any payments on its loan prior to the full satisfaction of the senior loan, except for defined "Permitted Payment[s]," which include "Permitted Interest Payments" and "Permitted Recovery Payments."

Permitted Interest Payments include payments of monthly interest accruing on the outstanding principal balance of the junior loan to the extent such payments are made from the "Subordinated Interest Reserve Account [SIRA]." The SIRA is a deposit account consisting of a single $2 million advance from Marshall. The Intercreditor Agreement states that neither Marshall nor Boulder Bay has an obligation to deposit more money into the SIRA if its funds are depleted.

Permitted Recovery Payments include the proceeds of any recovery obtained by Crystal Bay against the guarantors in the event Boulder Bay defaults on the junior loan to the extent such proceeds cover Crystal Bay's recovery expenses. The remainder of such proceeds must be

applied to the senior creditor's loan if it has not been fully satisfied. However, if Crystal Bay recovers from the SIRA, such a recovery may be applied towards the junior loan.

Eventually, Boulder Bay defaulted on, and sought extensions of, both the junior and senior loans. Both loans were extended after Crystal Bay and Boulder Bay executed a Loan Modification Agreement. Under the Modification Agreement, Crystal Bay applied the remaining funds in the SIRA towards the outstanding principal balance of the junior loan, and Boulder Bay paid $1,624,801 towards the principal balance of the junior loan. The Modification Agreement also amended the definition of "Permitted Interest Payments," such that these payments no longer needed to be paid from the SIRA.[1]

Subsequently, Boulder Bay again defaulted on the junior and senior loans, and Marshall assigned its interest in the senior loan to Outsource Services Management, LLC (Outsource), who then assigned the senior loan to OSM-REO Boulder Bay, LLC (OSM-REO). As a result of the default, Crystal Bay filed suit against the guarantors for breach of guaranty. The district court dismissed Crystal Bay's initial complaint without prejudice, holding OSM-REO was a necessary party under NRCP 19. Crystal Bay filed a first amended complaint against the guarantors and OSM-REO, and OSM-REO filed a counterclaim seeking, among other things, a declaration that the Intercreditor Agreement entitled it to all recovery proceeds obtained by Crystal Bay against the guarantors.

Thereafter, OSM-REO assigned its interest in the senior loan to respondent/cross-appellant JMA Boulder Bay Holdings, LLC (JMA), who

---

[1]Marshall consented to the changes to the Intercreditor Agreement.

was substituted into the action. JMA filed a separate action against the guarantors to recover on the senior guaranties. Ultimately, both Crystal Bay and JMA settled with the guarantors. Specifically, Crystal Bay settled with the guarantors for $4,000,000, and JMA settled with the guarantors for $14,500,000. However, Crystal Bay and JMA continued to dispute which entity was entitled to Crystal Bay's recovery proceeds.

The district court concluded that (1) the Intercreditor and Modification Agreements were clear and unambiguous; (2) the Intercreditor Agreement entitled JMA to the settlement proceeds, less Crystal Bay's recovery expenses of $555,731.04; and (3) JMA could enforce the Intercreditor Agreement. Crystal Bay appeals, and JMA cross-appeals, from the district court's order (Docket No. 69386). The district court then awarded JMA prejudgment interest as well as attorney fees and costs. Crystal Bay also appeals from this order and the subsequent entry of final judgment (Docket Nos. 70000, 70125).

In these appeals, Crystal Bay argues that the Intercreditor Agreement's plain language allows it to retain the settlement proceeds as a Permitted Interest Payment. Crystal Bay also argues that, even if the Intercreditor Agreement would allow JMA to retain some portion of the settlement proceeds, JMA never acquired an interest in the Intercreditor Agreement. Finally, Crystal Bay argues that the district court erred in awarding JMA prejudgment interest as well as attorney fees and costs. We reject these arguments and affirm the district court's orders.[2]

---

[2]Crystal Bay also argues that (1) the district court erroneously looked outside the contracts in determining the parties' intent, (2) the district court's findings are not supported by the record, (3) the district court's interpretation of the Intercreditor Agreement rendered the Modification

*The Intercreditor Agreement entitles JMA to the settlement proceeds, less Crystal Bay's recovery expenses*

Crystal Bay argues that the Intercreditor Agreement allows it to retain the entirety of the settlement proceeds as a Permitted Interest Payment because such payments no longer need to be paid out of the SIRA pursuant to the Modification Agreement. We disagree.

We review a district court's interpretation of a contract de novo. *Am. First Fed. Credit Union v. Soro*, 131 Nev., Adv. Op. 73, 359 P.3d 105, 106 (2015). When interpreting a contract, "[t]his court initially determines whether the language of the contract is clear and unambiguous; if it is, the contract will be enforced as written." *Id.* (internal quotation marks omitted). A contract is ambiguous if it "is susceptible to more than one reasonable interpretation." *Id.*

Section 8(b) of the Intercreditor Agreement states that:

> [t]he proceeds of any recovery . . . will be applied (1) first, if [Crystal Bay] has incurred Recovery Expenses in connection with the subject recovery and Senior Creditor has not independently incurred its own Recovery Expenses in connection with the subject recovery, to pay the reasonable Recovery Expenses of [Crystal Bay] (including, without limitation, reasonable attorney's fees), and

---

Agreement meaningless, (4) the parties' post-modification conduct demonstrates that Crystal Bay is entitled to the $4,000,000 settlement, (5) the district court's interpretation of the Intercreditor Agreement is unfair and leads to an absurd result, and (6) public policy requires interpreting the Intercreditor Agreement in its favor. Having considered these arguments, we conclude that they are without merit, and they will not be addressed further. Moreover, to the extent the district court erred in referring to the Nevada Uniform Commercial Code (UCC), we hold such an error was harmless. *See* NRCP 61. The district court's reference to the UCC was dictum and unnecessary to its disposition of the matter.

(2) second, to payment of the [senior loan] until the [senior loan is] fully Satisfied.

We hold that this language is clear and unambiguous, and that it entitles JMA to the settlement proceeds less Crystal Bay's recovery expenses. Moreover, the Modification Agreement did not alter or amend Section 8(b) of the Intercreditor Agreement. Therefore, although the Modification Agreement allowed Crystal Bay to receive interest payments from outside the SIRA, the Intercreditor Agreement clearly directs that the settlement proceeds be applied first to Crystal Bay's recovery expenses, and second, to JMA's loan if it has not been fully satisfied.

Crystal Bay next argues that JMA's loan was fully satisfied when JMA settled with the guarantors, and thus, it may retain the entirety of the settlement proceeds. However, at the time Crystal Bay received the $4,000,000 settlement, (1) the Intercreditor Agreement was in full force and effect, (2) Boulder Bay had defaulted on the senior loan, and (3) JMA had not yet settled with Boulder Bay. It was at this time that Crystal Bay breached the Intercreditor Agreement.

Moreover, in the settlement agreement, JMA "expressly reserve[d] all right, title, and interest in, to and under its claims and rights in the Crystal Bay Lawsuit," and both the guarantors and Boulder Bay released all claims they had in the settlement proceeds. As such, Boulder Bay is only discharged from any claims arising out of the senior loan if JMA reserves the right to recover Crystal Bay's settlement proceeds under the Intercreditor Agreement. Therefore, JMA's settlement does not prohibit it from recovering in this matter.[3]

---

[3]On cross-appeal, JMA argues that the district court erred in awarding Crystal Bay $555,731.04 in recovery expenses. We reject this

*JMA has the right to enforce the Intercreditor Agreement*

Crystal Bay argues that JMA never acquired any legal rights or interest in the Intercreditor Agreement, and thus, JMA has no right to enforce the Intercreditor Agreement. We disagree.

Marshall assigned to Outsource "all of [its] right, title and interest in, to and under the Loan Documents, including all of its rights thereunder," and the term "Loan Documents" included "loan documents, agreements, and instruments, and . . . other agreements, undertakings, documents and instruments evidencing, supporting, and relating to the Loans." Likewise, Outsource assigned to OSM-REO "all right and interest . . . in and to all other loan documents executed and delivered in connection with the [relevant deed of trust], including, without limitation, promissory notes, security agreements, guaranties, indemnities, collateral assignments and any other loan documents related to the debt thereby secured."

Although these assignments do not directly reference the Intercreditor Agreement, the broad language of these agreements necessarily include the Intercreditor Agreement. In addition, OSM-REO explicitly assigned its interest in the Intercreditor Agreement to JMA. Therefore, we hold the district court correctly concluded that the Intercreditor Agreement was conveyed to JMA. *See Am. First Fed. Credit Union*, 131 Nev., Adv. Op. 73, 359 P.3d at 106 (stating an unambiguous contract will be enforced as written).

---

argument. The district court determined that the senior creditor was a necessary party to Crystal Bay's action against the guarantors, and this determination is not challenged on appeal. Therefore, Crystal Bay was required to join the senior creditor, and we hold the district court properly awarded Crystal Bay its attorney fees and costs incurred in this litigation.

Nonetheless, Crystal Bay argues that these conveyances are invalid because none of the senior creditors sought its consent before assigning their interests in the senior loan. Crystal Bay relies on Section 9 of the Intercreditor Agreement, which states that

> in connection with any voluntary sale or other voluntary disposition of any Collateral to be permitted by Senior Creditor other than in connection with a Senior Default, Senior Creditor will obtain [the junior creditor's] consent . . . to such sale or other disposition prior to effecting such sale or disposition.

We hold that Section 9 of the Intercreditor Agreement does not prohibit a senior creditor from assigning its interest in the senior loan without the junior creditor's consent. According to the contract's plain language, Section 9 governs the "voluntary sale . . . of any Collateral *to be permitted by Senior Creditor*." (Emphasis added.) Section 9 also states that the senior creditor has "the exclusive right to . . . permit [Boulder Bay] or any other Obligor to sell, dispose of or otherwise deal with all or any part of the Collateral." Therefore, Section 9's consent requirement applies if Boulder Bay wishes to sell or otherwise dispose of the collateral for reasons unrelated to a senior default; it does not apply when senior creditors assign their interests in the senior loan.

Indeed, Section 15 of the Intercreditor Agreement explicitly prohibits the junior creditor from assigning its interest in the junior loan without the senior creditor's consent if the senior loan has not been fully satisfied. The contract does not contain an analogous provision limiting the senior creditor's ability to transfer its interest in the senior loan. Therefore, we hold that a senior creditor is not required to obtain Crystal Bay's consent before transferring its interests in the senior loan, and that JMA has the right to enforce the Intercreditor Agreement.

*The district court properly awarded JMA prejudgment interest as well as attorney fees and costs*

Finally, Crystal Bay argues that the district court erred in awarding JMA prejudgment interest as well as attorney fees and costs. Specifically, JMA argues (1) the district court lacked jurisdiction to award prejudgment interest, (2) the award of prejudgment interest amounts to an improper penalty, (3) prejudgment interest cannot be awarded when the amount of damages is unknown prior to the entry of judgment, and (4) attorney fees cannot be awarded because the district court's judgment did not exceed JMA's offer of judgment. We reject these arguments.

First, although "a timely notice of appeal divests the district court of jurisdiction to act and vests jurisdiction in this court," it is well established that "the district court retains jurisdiction to enter orders on matters that are collateral to and independent from the appealed order, *i.e.*, matters that in no way affect the appeal's merits." *Mack-Manley v. Manley*, 122 Nev. 849, 855, 138 P.3d 525, 529-30 (2006) (internal quotation marks omitted). We hold that JMA's motion for prejudgment interest was a matter collateral to the district court's order awarding JMA $3,444,268.96 in damages. Specifically, JMA's motion for prejudgment interest has no bearing on whether the Intercreditor Agreement entitled JMA to a portion of the settlement proceeds, or whether the Intercreditor Agreement was validly conveyed to JMA. Therefore, the district court had jurisdiction to rule on such a motion.

Second, the district court's award of prejudgment interest does not constitute a penalty. We have previously recognized that "interest is recoverable as a matter of right in actions upon contracts, express or implied, upon all money from the time it becomes due." *Paradise Homes, Inc. v. Cent. Sur. & Ins. Corp.*, 84 Nev. 109, 116, 437 P.2d 78, 83 (1968);

NRS 99.040(1). Section 6 of the Intercreditor Agreement directs Crystal Bay to hold restricted payments in trust for the senior creditor and to "promptly turn over" any such payments to the senior creditor. Having declined to turn over such funds, the award of prejudgment interest properly serves to compensate JMA, not to penalize Crystal Bay. *See Ramada Inns, Inc. v. Sharp*, 101 Nev. 824, 826, 711 P.2d 1, 2 (1985) (stating that prejudgment interest "is not designed as a penalty").[4]

Third, an award of prejudgment interest is "allowed where the damage award is known or ascertainable at a time prior to entry of judgment, either by reference to amounts fixed by the contract, or from established market prices." *Hornwood v. Smith's Food King No. 1*, 107 Nev. 80, 88, 807 P.2d 208, 214 (1991). The Intercreditor Agreement unambiguously states that JMA is entitled to any recovery proceeds less Crystal Bay's recovery expenses. In addition, Crystal Bay could calculate the amount of its own recovery expenses. Therefore, the district court properly concluded that Crystal Bay could ascertain the damage award prior to the entry of judgment.

Fourth, we have previously held that "pre-offer prejudgment interest *must* be added to the judgment when comparing it to the offer of judgment, unless the offeror clearly intended to exclude prejudgment interest from its offer." *Albios v. Horizon Communities, Inc.*, 122 Nev. 409, 426, 132 P.3d 1022, 1033 (2006) (emphasis added) (internal quotation marks omitted). Contrary to Crystal Bay's argument, JMA's offer of

---

[4]Furthermore, Crystal Bay's reliance on caselaw relating to interpleaded funds is misplaced, as the district court denied OSM-REO's motion to require Crystal Bay to interplead any funds recovered from the guarantors.

judgment included prejudgment interest: "This Offer . . . includ[es] any and all damages, penalties, interest, attorneys' fees, costs, and any and all related expenses." Therefore, the district court's final judgment ($3,649,863.51) exceeds JMA's offer of judgment ($3,550,000.00), and the district court properly awarded JMA attorney fees and costs. *See* NRCP 68.

Based on the foregoing, we conclude that the Intercreditor Agreement entitled JMA to the settlement proceeds less Crystal Bay's recovery expenses, that JMA had the right to enforce the Intercreditor Agreement, and that the district court properly awarded JMA prejudgment interest as well as attorney fees and costs. Accordingly, we

ORDER the judgments of the district court AFFIRMED.

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

cc: Hon. Patrick Flanagan, District Judge
Margaret M. Crowley, Settlement Judge
McDonald Carano LLP/Reno
Brownstein Hyatt Farber Schreck, LLP/Las Vegas
Washoe District Court Clerk