TAGE II CORPORATION *vs.* DUCAS (U.S.) REALTY CORP.
& others.[1]

Suffolk.　March 9, 1984. — March 29, 1984.

Present: KASS, ROSE, & SMITH, JJ.

*Landlord and Tenant,* Assignment of lease.

Where the landlord under a lease to a corporate tenant had neither been informed of nor consented to an assignment of the lease to a second corporation having the same officers, directors, and stock ownership as the original tenant, an attempt to assign the lease created merely a tenancy at will between the landlord and the second corporation notwithstanding language in the lease which, although requiring the landlord's consent to an assignment, provided that such consent "shall not be unreasonably withheld." [665-667]

A landlord's acceptance of checks for rent due under a lease did not, in the circumstances, operate as an acknowledgment by the landlord of an assignment of the lease by the original corporate tenant to a second corporation having a nearly identical name. [665-666]

Under the terms of a lease, a tenant was entitled to notice in writing from the landlord that it had committed a breach of the lease by having made an unconsented-to assignment, and, after such notice, would have an opportunity to cure the breach by obtaining a reassignment. [667]

CIVIL ACTION commenced in the Superior Court Department on December 21, 1981.

The case was heard by *Cashman, J.,* a Juvenile Court judge sitting under statutory authority.

*Daniel C. Crane* for the plaintiff.

*Susan S. Dunn* for the defendants.

KASS, J.　As executed on August 14, 1972, the lease in issue, which was of commercial space at 150 Tremont Street, Boston, ran to *Tage* Corporation ("Tage I") as tenant.　A notice of lease

---

[1] Ducas Investment N.V. and Tana Investment Corporation N.V.

dated November 6, 1978 (the lease had a term of fifteen years and three five-year renewal options), identified the same corporation, i.e., Tage I, as tenant. The action in this case, on behalf of the tenant of the space described in the lease and notice of lease, was brought in the name of *Tage II* Corporation. Tage II was organized in 1973, i.e., after the lease was executed, with directors, officers, and stock ownership identical to those of Tage I (the principal in each was Joseph P. Tagliente).

Tage II claims standing to maintain its action (which, so far as material to the appeal, is for transitory diminution in the value of the leasehold by reason of the landlord's renovation work) on the basis of an assignment in 1973 of the lease by Tage I to Tage II. No writing memorialized the purported assignment, nor did Tage I trouble to share with its landlord that it had made an assignment of the lease. Indeed, the notice of lease executed and recorded five years later was signed on behalf of Tage I. To the extent that Tage I assigned its lease to Tage II it was in breach of § 23 of the lease, which prohibited an assignment or subletting "without the Lessor's prior written consent, which consent shall not be unreasonably withheld or delayed." The landlord, in its answer, denied the assignment and set up the failure by Tage I to secure consent to the assignment as a defense to the action by Tage II.

After a trial without jury, a judge in the Superior Court found and ruled: that the landlord had not consented to the assignment of the lease, if any, to Tage II; that "the alleged assignment . . . constitutes a breach of . . . the lease"; and that Tage II stood in no better relationship to the landlord than as a tenant at will. The judge also found that the landlord's renovation work, on 150 Tremont Street, Boston, did not interfere materially with the tenant's use of the leased premises on the ground floor of that building as a Burger King restaurant. Accordingly, the landlord committed no breach of the covenant of quiet enjoyment.

There is no merit to the contention of Tage I and Tage II, that the landlord, by accepting checks for rent from Tage II, acknowledged the assignment of the lease and is estopped to deny it. The appearance of a roman numeral two after "Tage"

on the rent check is too subtle a hint of a change in identity of the corporate tenant to charge the landlord with notice of the substitution of Tage II for Tage I. The roman numeral could well be taken as the earmark of a particular bank account maintained by Tage I. Thus, although the receipt of rent after breach of a lease is a waiver of the breach if received with knowledge of the breach and without reservation, the judge rightly concluded the landlord did not have knowledge of the assignment. Compare *Nelson Theatre Co.* v. *Nelson,* 216 Mass. 30, 34 (1913); *Saxeney* v. *Panis,* 239 Mass. 207, 210 (1921); *Maybury Shoe Co.* v. *Izenstatt,* 320 Mass. 397, 402 (1946); Schwartz, Lease Drafting in Massachusetts § 9.8 n.1 (1961). See also *Ames* v. *B. C. Ames Co.,* 335 Mass. 511, 513 (1957) (mere payment of rent for another does not create assignment of the lease).

The landlord was entitled to the tenant's compliance with the terms of the written lease, which precluded an assignment without written consent. In view of the similarities in structure and personalities between Tage I and Tage II and the status of their principal, Joseph P. Tagliente, as a guarantor (under a writing immediately following the signature block of the original lease and signed on the same date) of the obligations of the tenant under the lease, the landlord might have had to strain its imagination, or that of its lawyer, to invent a reasonable ground for withholding or delaying consent to the assignment. See Schwartz, *supra,* § 9.7, at 428-429. That, however, is a challenge the landlord is entitled to receive under the lease. Restatement (Second) of Property (Landlord and Tenant) § 15.2 comment *g* (1977):

> "If a party to the lease proceeds to make a transfer of an interest in the leased property in violation of the restraint on alienation imposed on him without first seeking the other party's consent, the transfer will be in violation of the restraint even though the transferring party might be able to prove that the other party would have had no reasonable basis for objecting to the transfer. The reason for this is that the other party does have a legitimate basis for insisting that at least he know of a contemplated trans-

fer and the restraint on alienation is a method of assuring him he will have such knowledge."

See also Hall, Massachusetts Law of Landlord and Tenant § 88, at 90 (4th ed. 1949). We are not prepared to assume that the landlord could not have advanced a reasonable ground for refusing its consent.

On this appeal the tenant does not contest the trial judge's findings that it had sustained no material interference with the conduct of its business as might have risen to the dignity of a breach of the covenant of quiet enjoyment. The only judgment entered is one dismissing Tage II's complaint. What has provoked the appeal is the judge's ruling that the unwritten assignment creates a tenancy at will between Tage II and the landlord. Such a status, terminable, as it is, on thirty days' notice, is obviously precarious compared to the status of a tenant under a written lease with four more years to go on the initial term, the position which Tage II would have enjoyed on a proper assignment consented to by the landlord. No written instrument ever formalized the assignment from Tage I to Tage II. It is settled that in such circumstances Tage II cannot claim more than a tenancy at will. G. L. c. 183, § 3. *Scotti* v. *Bullock,* 225 Mass. 510, 512 (1917). *Podren* v. *Macquarrie,* 233 Mass. 127, 130 (1919). See *Chester A. Baker, Inc.* v. *Shea Dry Cleaners, Inc.,* 322 Mass. 311, 312-313 (1948).

In this case, however, the landlord has expressly disavowed the assignment, has declined to recognize it, and claimed a breach of the lease. The lease provides that, as to any breach of the lease other than the payment of rent or a sum due under the lease, the landlord is to give written notice and the tenant has thirty days to cure the default. Here, turnabout is fair play. The tenant, as well as the landlord, is entitled to compliance with the written terms of the lease. No notice of default to Tage I in accordance with the lease provisions appears in the record. It would appear open, therefore, to Tage I to remove the default, prior to or within thirty days of such notice, by obtaining a reassignment of the lease from Tage II, and so restoring the status quo.

*Judgment affirmed.*