# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 09-974, consolidated with  09-975, consolidated with 09-1107


VISION AVIATION, LLC

VERSUS

AIRPORT AUTHORITY FOR AIRPORT DISTRICT NO. 1 OF
CALCASIEU  PARISH, LOUISIANA

***consolidated with***

AIRPORT AUTHORITY FOR AIRPORT DISTRICT NO. 1 OF
CALCASIEU PARISH, LOUISIANA

VERSUS

VISION AVIATION, LLC

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2006-2282 C/W 2007-954
HONORABLE WILFORD D. CARTER, DISTRICT JUDGE

**********

## JOHN D. SAUNDERS
## JUDGE

**********

Court composed of  John D. Saunders, Oswald A. Decuir, and James T. Genovese, Judges.

REVERSED AND REMANDED.

Rudie Ray Soileau,  Jr.
Lundy, Lundy, Soileau, & South, L.L.P.
Attorney at Law
P. O. Box 3010
Lake Charles, LA 70602
(337) 439-0707
Counsel for Defendant/Appellee:
Airport Authority for Airport District No. 1 of Calcasier Parish, LA

**Jill Anne Gautreaux**
**David J. Halpern**
**McGlinchey Stafford, PLLC**
**601 Poydras St, 12th Floor**
**New Orleans, LA 70130**
**(504) 586-1200**
**Counsel for Defendant/Appellee:**
**Airport Authority for Airport District No. 1 of Calcasieu Parish, LA**

**Kenneth Michael Wright**
**Attorney at Law**
**203 West Clarence St.**
**Lake Charles, LA 70601**
**(337) 439-6930**
**Counsel for Plaintiff Appellant:**
**Vision Aviation, LLC**

**SAUNDERS, Judge.**

Herein we address the issue of whether the trial court erred in adjudicating the termination of a Lease Agreement and Development Agreement between Vision Aviation, LLC ("Vision") and the Airport Authority for Airport District No. 1 of Calcasieu Parish Louisiana ("Airport Authority") without the presence of Whitney National Bank ("Whitney") as a party to the litigation. We find that the court erred, and we reverse.

**FACTS AND PROCEDURAL HISTORY:**

This case addresses a business relationship between the Airport Authority and Vision. The two parties reached an agreement involving the development of the Lake Charles Regional Airport and the lease of certain properties there. Among the documents representing this relationship were a Lease Agreement and a Development Agreement wherein the Airport Authority leased hangers one, two, and three to Vision.

For various reasons, the relationship between the parties eventually soured, leading to the current litigation. Legal action commenced when Vision filed a petition seeking declaratory relief in May of 2006. In February of 2007 the Airport Authority filed an Answer and Reconventional Demand seeking to terminate the development and lease agreements with Vision. In March and April of 2009 the 14th Judicial District Court conducted a trial on the merits. This was a bifurcated trial that only addressed the eviction of Vision from the Lake Charles Regional Airport and the termination of the lease and development agreements. The trial court found in favor of the Airport Authority, and a judgment was signed on May 5, 2009.

Following the judgment of the trial court, Vision instituted this appeal and thereafter also filed in the trial court a Peremptory Exception of Failure to Join Parties

Needed for Just Adjudication. In the exception, Vision alleged that Whitney was a necessary party in that it held a lease hold mortgage over the Development Agreement terminated by the judgment of the trial court. The trial court granted the exception on July 22, 2009, but no judgment had been filed at the time of this appeal.

**ASSIGNMENTS OF ERROR:**

In summary, Vision alleges that the trial court erred in ruling to terminate the Development Agreement and evict Vision from the Lake Charles Regional Airport without Whitney being joined as a party.

**LAW AND DISCUSSION:**

At issue before this court is whether the judgment rendered by the trial court in favor of the Airport Authority is an absolute nullity for failure to join Whitney as a party. For the following reasons, we find that it is.

Before addressing the matter before us, we note that the trial court previously granted a Peremptory Exception of Failure to Join Parties Needed for Just Adjudication. However, we give no effect to this ruling as it was issued after the trial court had been divested of jurisdiction over the matter. Louisiana Code of Civil Procedure Article 2088 reads, in pertinent part:

> A. The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal . . . .

Vision initially filed a suspensive appeal, but the action was ultimately converted into a devolutive appeal. Accordingly, the jurisdiction of the trial court came to a close upon the granting of the order of appeal, May 12, 2009. The trial court's grant of the peremptory exception did not occur until July of 2009, well after

its jurisdiction had divested.

We further note that Vision did not address the issue of nonjoinder during the trial on the merits. Ordinarily, this court would be prevented from addressing an issue not raised at trial. However, La.Code Civ.P. art. 927(B) affords this court the authority to raise the issue of nonjoinder on its own motion. We choose to exercise this right. To that end, we now continue our analysis of this matter.

At the heart of this issue is La.Code Civ.P. art. 641. It reads as follows:

> A person shall be joined as a party in the action when either:
>
> (1) In his absence complete relief cannot be accorded among those already parties.
>
> (2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
>
> (a) As a practical matter, impair or impede his ability to protect that interest.
>
> (b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.

A Collateral Mortgage was granted by Vision to Whitney, securing a one million dollar ($1,000,000.00) collateral mortgage note. The mortgage covers the property known as the Vision Aviation aircraft hanger at 500 Airport Avenue, Lake Charles, LA 70805, together with all of its present and future rights, privileges, and advantages relating to the property. This mortgage is present in the record as of May 5, 2009—prior to the divestiture of jurisdiction from the trial court on May 12, 2009. Not only does Whitney hold a mortgage on the property that is central to the dispute between the parties, Whitney was also given certain rights as a leasehold Mortgagee in the Development Agreement—leaving little doubt that Whitney had a significant interest in the dispute between Vision and the Airport Authority. The following

-3-

provisions are found in Section 15 of the Development Agreement:

(b) OWNER shall, upon serving DEVELOPER with any notice of default, simultaneously serve a copy of such notice upon the holder(s) of such leasehold Mortgage(s). The leasehold Morgagee(s) shall thereupon have the same period, after service of such notice upon it, to remedy or cause to be remedied the defaults complained of, and OWNER shall accept such performances by or at the instigation of such leasehold Mortgagee(s) as if the same had been done by DEVELOPER.

(c) Anything therein contained notwithstanding, while such leasehold Mortgage(s) remains unsatisfied of record, or until written notice of satisfaction is given by the holder(s) to OWNER, if any default shall occur which, pursuant to any provision of this Agreement, entitled OWNER to terminate this Agreement, and if before the expiration of thirty (30) days from the date of service of notice of termination upon the leasehold Mortgagee(s) such leasehold Mortgagee(s) shall have notified OWNER of its desire to nullify such notice and shall have paid to OWNER all rent and additional rent and other payments herein provided for, and then in default and shall have complied or shall commence the work of complying with all of the other requirements of this Agreement, except as provided in paragraph (g) of this Section, if any are then in default, and shall prosecute the same to completion with reasonable diligence, then in such event OWNER shall not be entitled to terminate this Agreement and any notice of termination theretofore given shall be void and of no effect;

(d) If OWNER shall elect to terminate this Agreement by reason of any default of DEVELOPER, the leasehold Mortgagee(s) shall not only have the right to nullify any notice of termination buy curing such default, as aforesaid, but shall also have the right to postpone and extend the specified date for the termination or this Agreement as fixed by OWNER in its notice of termination, for a period of not more than six (6) months, provided that such leasehold Mortgagee(s) shall cure or cause to be cured any then existing money defaults and meanwhile pay the rent, additional rent and comply with and perform all of the other terms, conditions and provisions of this Agreement on DEVELOPER's part to be complied with and performed, other than past non-monetary defaults, and provided further that the leasehold Mortgagee(s) shall

-4-

> forthwith take steps to acquire or sell DEVELOPER's interest in this Agreement by foreclosure of the Mortgage(s) or otherwise and shall prosecute the same to completion with all due diligence. If at the end of said six (6) month period the leasehold Mortgagee(s) shall be actively engaged in steps to acquire or sell DEVELOPER's interest herein, the time of said Mortgagee to comply with the provisions of this Section shall be extended for such period as shall be reasonably necessary to complete such steps with reasonable diligence and continuity.

By providing that the Leasehold Mortgagee(s) shall be afforded the opportunity to cure any defaults on the part of Vision, the Development Agreement acknowledges the importance of Whitney's interest in the property. The value of the collateral that Whitney is holding is directly tied to the agreements between Vision and the Airport Authority. Any judgment, in Whitney's absence, terminating those agreements and evicting Vision from the property is sure to impair Whitney's ability to protect that interest.

*Richmond v. Board of Commissioners of the Orleans Levee District*, 08-774 (La.App. 4 Cir. 11/26/08), 2 So.3d 485, is a recently decided and factually similar case to the matter before us. The case involved a boat slip lease where the lessee brought an action against the lessor seeking to terminate the lease and recoup damages. The trial court granted summary judgment in favor of the lessee. Whitney National Bank held a Leasehold Mortgage over the property subject to the lease but was not joined as a party. On appeal, the court found that Whitney was a necessary party and that the trial court erred in adjudicating the matter in its absence. "Here the trial court adjudicated the rights of the lease with only the debtor, the plaintiff, being represented. The trial court erred in adjudicating the rights to the lease without the creditor's presence because the termination of the lease rights affects the creditor, i.e. Whitney." *Id*. at 488. We find *Richmond* to be directly on point. Just as Whitney had

an interest in the property subject to the boat slip lease, thus making it a party needed for just adjudication, it had the same interest in the property subject to the Development Agreement.

The Airport Authority suggests that the Collateral Mortgage evidencing Whitney's interest in the property may not have been properly in the record. The claim is made despite the fact that the mortgage was included as part of the record prior to the divestiture of the jurisdiction of the trial court on May, 12 2009. Regardless of the propriety of the mortgage's inclusion in the record, our decision is rooted in the language of the Development Agreement. It is well-settled law that contracts have the force of law between the parties. La.Civ.Code art. 1983. With that in mind, we look to the Development Agreement and notice the benefits afforded to the leasehold mortgagee in the event of default on the part of Vision. The agreement provides the mortgagee with the right to cure the default, to postpone and extend the date of the agreement's termination, and it even contemplates the mortgagee acquiring Vision's interest in the agreement by way of foreclosure on the mortgage. In short, the mortgagee is provided the opportunity to maintain its security. The grant of such benefits to a mortgagee is addressed in La.Civ.Code art. 1978 as a stipulation for a third party. This concept is better known in our jurisprudence as a stipulation *pour autrui*.

The article provides that when a benefit in a contract is stipulated for a third party, the contract may not be dissolved without the beneficiary's agreement. There are very few governing rules on third party beneficiary contracts, and determinations on their existence must be made on a case by case basis. *Joseph v. Hosp. Serv. District No. 2 of Parish of St. Mary*, 05-2364 (La. 10/15/06), 939 So.2d 1206. The

most basic requirement for determining the existence of such a contract is whether the contract clearly manifests an intent to stipulate a benefit for a third party. *Id*. As stated above, we find that the intent to manifest a benefit was clear. We also find that it was not necessary that Whitney be mentioned by name in the agreement. "Although a stipulation *pour autrui* may be for the benefit of 'undetermined persons,' those beneficiaries must be determinable on the day in which the agreement is to have effect for their benefit. *Andrepont v. Acadia Drilling Co.*, 255 La. 347, 231 So.2d 347 (1969)." *Camellia Place Subdivision–Block 1 Association v. Willet*, 491 So.2d 764, 768 (La.App. 3 Cir. 1986), *writ denied*, 496 So.2d 349 (La.1986). Accordingly, Whitney was properly a third party beneficiary under the agreement, despite not being named specifically, because its existence as a mortgagee of the property was determinable at the time of the agreement's termination.

The Airport Authority urges that Vision should have brought Whitney in as a party at the trial stage. However, the duty to do so is not singularly held by Vision. Rather, it falls on both parties. The rights of the potential third party beneficiary must be protected. Under the clear terms of the contract, the Airport Authority cannot evict Vision to the detriment of the third party beneficiary. It follows that eviction was not proper without either notice to the third party or proof that the Airport Authority was never provided with information suggesting the third party's existence. Thus, the judgment of the trial court was not proper, even if we do not entertain the evidence before us of Whitney's interests.

We find that Whitney was a party needed for just adjudication as contemplated by La.Code Civ.P. art. 641 and, at the very least, that there is an absence of evidence showing that the Airport Authority was never notified of Whitney's existence. For

this reason, we find that the trial court erred in adjudicating the matter. The judgment is an absolute nullity. *See Terrebonne Parish School Board v. Bass Enterprises Production Co.*, 02-2119 (La.App. 1 Cir. 8/8/03), 852 So.2d 541, *writ denied*, 03-2786 (La. 1/9/04), 862 So.2d 984, *writ denied*, 03-2873 (La. 1/9/04), 862 So.2d 985. Accordingly, we reverse the judgment of the trial court.

**CONCLUSION:**

For the foregoing reasons, we reverse the ruling of the trial court terminating the Development Agreement between Vision and the Airport Authority and evicting Vision from the Lake Charles Regional Airport. We find that Whitney was a party needed for just adjudication and also that there is no evidence indicating that the Airport Authority was not notified of the existence of Whitney. Thus, we find that the judgment of the trial court in Whitney's absence was an absolute nullity, and the matter is reversed and remanded to the trial court for further proceedings. The costs of this appeal are assessed to the appellee, Airport Authority.

**REVERSED AND REMANDED.**