135 Nev., Advance Opinion 19

# IN THE COURT OF APPEALS OF THE STATE OF NEVADA

ROSE, LLC, A NEVADA LIMITED
LIABILITY COMPANY,
Appellant,
vs.
TREASURE ISLAND, LLC, A NEVADA
LIMITED LIABILITY COMPANY,
Respondent.

No. 71941-COA



FILED

JUN 06 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a judgment following a bench trial in a contract action. Eighth Judicial District Court, Clark County; Elizabeth Goff Gonzalez, Judge.

*Affirmed.*

Lewis Roca Rothgerber Christie LLP and Abraham G. Smith, Daniel F. Polsenberg, and Joel D. Henriod, Las Vegas,
for Appellant.

Hutchison & Steffen, LLC, and Michael K. Wall and Mark Hutchison, Las Vegas; Fennemore Craig, P.C., and Patrick J. Sheehan and Steven M. Silva, Las Vegas,
for Respondent.

BEFORE GIBBONS, C.J., TAO and BULLA,[1] JJ.

_____

[1]Subsequent to the oral argument held in this matter, the Honorable Bonnie Bulla was appointed to the Nevada Court of Appeals. Judge Bulla has listened to the audio recording of oral argument and considered all arguments and briefs in participating in this matter.

19-24492

## *OPINION*

By the Court, TAO, J.:

In this appeal arising from the alleged breach of a commercial lease, we explore two legal questions not fully developed in Nevada law: (1) when a written lease is otherwise silent, whether the allegedly defaulting party is entitled to "strict" or merely "substantial" compliance with the notice requirements set forth in the lease for declaring the party in default, and (2) whether, under the circumstances of this case, a subtenant becomes a necessary party under Rule 19 of the Nevada Rules of Civil Procedure[2] (NRCP) to an action for breach of contract between the landlord and the prime tenant.

These questions arise from a lease between landlord Treasure Island, LLC, and its prime tenant, Rose, LLC, for space inside of Treasure Island's hotel/casino that was subleased to a third party, Señor Frog's (a subsidiary of a Mexican company called Operadora Andersons, hereinafter collectively referred to as Señor Frog's), and used to operate a restaurant. Treasure Island alleged that Rose failed to make timely rent payments and declared the lease in default, triggering the instant lawsuit. In addressing the two questions before us, we note that a clear majority of states requires landlords to strictly comply with any contractual notice provisions when declaring a lease in default, but nonetheless we conclude that any failure to do so is excused when the allegedly defaulting party receives actual notice

---

[2]NRCP 19 was amended effective March 1, 2019, but the recent changes do not affect any issue raised in this appeal. *See In re Creating a Comm. to Update & Revise the Nev. Rules of Civil Procedure*, ADKT 0522 (Order Amending the Rules of Civil Procedure, the Rules of Appellate Procedure, and the Nevada Electronic Filing and Conversion Rules, December 31, 2018). We cite the text of the new rule herein.



of the default despite any noncompliance. We also conclude that, under the particular circumstances of this case, Señor Frog's was not a necessary party to the litigation under NRCP 19.

*FACTUAL AND PROCEDURAL HISTORY*

Treasure Island and Rose entered into a 10-year lease (with options to renew for another 20 years) for space inside of Treasure Island's Las Vegas Strip hotel/casino that was turned into a Señor Frog's bar and restaurant. The lease provided for both monthly rent and quarterly percentage rent and required that notices under the lease be sent to Susan Markusch (an officer of Rose), with a copy to Señor Frog's. The lease provided that, upon the giving of any notice of default, Rose would be given 10 days to cure any alleged breach of the lease.

The parties subsequently revised the lease a number of times through mutual agreement. At issue here is the fifth revision to the lease, which the parties negotiated primarily to reflect a change in the relationship between Rose and Señor Frog's, converting what had been a partnership between them into a sublease with Rose as the principal tenant and Señor Frog's as the subtenant. The fifth amendment introduced a new provision "for the benefit of Señor Frog's" as a subtenant, updated Rose's "notice address," and added Señor Frog's and Señor Frog's counsel to the list of those required to receive copies of any notices given under the lease. Although the amendment required notice to be given to Señor Frog's, by its terms the text of the amendment did not grant Señor Frog's any right to intervene to cure a default by Rose after receiving such notice.

Approximately one year later, Rose failed to make its quarterly percentage rent payment on time. Treasure Island's in-house counsel sent a notice regarding the missed payment to Rose's president, also cc'ing Rose's

in-house counsel via email. Treasure Island did not deliver separate notice to either Susan Markusch or Señor Frog's. After Rose failed to cure the default within the 10-day period set forth in the lease, Treasure Island's counsel sent a notice-of-termination letter to Rose's president and to Señor Frog's. In response to this letter, Señor Frog's attorney sent an email to Treasure Island asserting that the termination letter

> was sent to my client for notice . . . purposes only under section 11 of the fifth amendment to the lease agreement [and] my client, Señor Frog's, is not affected by default by Rose LLC as to prime tenant. As we further discussed, [Rose] is disputing the default. You have confirmed with me that [Treasure Island] does not plan on taking any action until the dispute with [Rose] is resolved, whether by court action or settlement between the parties. None of this will impact adversely on my client, which will be permitted to continue its subtenancy.

Thereafter, Treasure Island sued Rose alleging breach of the lease agreement and seeking declaratory relief. Rose counterclaimed, alleging breach of contract and breach of the implied covenant of good faith and fair dealing, and seeking a declaratory judgment. The district court conducted a bench trial during which the president of Señor Frog's testified as a witness and expressed no concern that Señor Frog's was not a participant in the lawsuit. Ultimately, the district court entered judgment in favor of Treasure Island, declaring that it properly terminated the lease. Rose now appeals.

## ANALYSIS

On appeal, Rose challenges the district court's judgment on two grounds. First, it argues that the district court erred in declaring the lease terminated because Treasure Island failed to give proper notice of the

default. Second, it argues that the judgment is void because a necessary party, namely Señor Frog's, was not joined in the action in violation of NRCP 19.

*Termination of the lease*

The parties do not dispute that Rose missed the quarterly rent payment in question. They also do not dispute that, after Treasure Island sent notice of the missed rent payment to Rose, Rose failed to pay within 10 days. Nonetheless, Rose argues that Treasure Island failed to comply with the notice requirements specifically agreed upon by the parties and recited in the fifth amendment and, therefore, the notice of default was legally ineffective, rendering the notice of termination ineffective. In response, Treasure Island concedes that its notice failed to strictly comply with the terms of the fifth amendment, but it argues that it substantially complied with those terms and that, in any event, the district court found that Rose received actual notice.

The Nevada Supreme Court has not yet addressed whether, under Nevada law, a party declaring another party in contractual default must comply strictly with the notice requirements set forth in the contract, or whether it need only substantially comply with those requirements, especially when the defaulting party has received actual notice. While Nevada law is silent, a review of other jurisdictions reveals that a clear majority of states that have addressed the question holds that a party declaring default must strictly comply with any and all contractual notice requirements. These courts reason that "equity abhors forfeitures of valuable leasehold interests," *Metro. Transp. Auth. v. Cosmopolitan Aviation Corp.*, 471 N.Y.S.2d 872, 873 (App. Div. 1984), and forfeiture is a result "so harsh[ that] the law requires that every prescribed requirement

be met unless waived by agreement of the parties," *Boyd v. Boone Mgmt., Inc.*, 676 S.W.2d 24, 26-27 (Mo. Ct. App. 1984). *See Tiller v. YW Hous. Partners, Ltd.*, 5 So. 3d 623, 629 (Ala. Civ. App. 2008); *Berry v. Crawford*, 373 S.W.2d 129, 131 (Ark. 1963); *Boston LLC v. Juarez*, 199 Cal. Rptr. 3d 452, 460 (Ct. App. 2016) (citing Cal. Civ. Code § 1442 (West 2007)); *Entrepreneur, Ltd. v. Yasuna*, 498 A.2d 1151, 1160 (D.C. 1985); *Wood v. Ensworth*, 430 So. 2d 617, 618 (Fla. Dist. Ct. App. 1983); *Preferred Real Estate Equities, Inc. v. Hous. Sys., Inc.*, 548 S.E.2d 646, 648 (Ga. Ct. App. 2001); *Tage II Corp. v. Ducas (U.S.) Realty Corp.*, 461 N.E.2d 1222, 1225 (Mass. App. Ct. 1984); *ARE-100/800/801 Capitola, LLC v. Triangle Labs., Inc.*, 550 S.E.2d 31, 35 (N.C. Ct. App. 2001); *Keller v. Bolding*, 678 N.W.2d 578, 584 (N.D. 2004); *Elizabethtown Lodge No. 596, Loyal Order of Moose v. Ellis*, 137 A.2d 286, 290 (Pa. 1958); *Litchfield Co. of S.C., Inc. v. Kiriakides*, 349 S.E.2d 344, 347 (S.C. Ct. App. 1986); *Vinson Minerals, Ltd. v. XTO Energy, Inc.*, 335 S.W.3d 344, 354 (Tex. App. 2010); *Grow v. Marwick Dev., Inc.*, 621 P.2d 1249, 1251 (Utah 1980); *Vt. Small Bus. Dev. Corp. v. Fifth Son Corp.*, 67 A.3d 241, 245 (Vt. 2013); *Tacoma Rescue Mission v. Stewart*, 228 P.3d 1289, 1291 (Wash. Ct. App. 2010); *see also Tatewosian v. McLellan*, 80 A.2d 879, 880 (R.I. 1951) (cited in *Turks Head Realty Tr. v. Shearson Lehman Hutton, Inc.*, 736 F. Supp. 422, 428 (D.R.I. 1990) for the proposition that notice provisions are literally construed); *cf. In re Kapiolani Blvd. Lands, Inc.*, 563 P.2d 390, 391 (Haw. 1977) (noting that covenants in a lease upon "the breach of which a forfeiture is claimed . . . must be strictly construed"); *Davis v. Wickline*, 135 S.E.2d 812, 814 (Va. 1964) ("[A] breach of covenant [in a lease] to sustain forfeiture is construed strictly against forfeiture.").

A minority of states, on the other hand, concludes that mere substantial compliance with contractual notice terms is sufficient. *See Kimmel v. Cockrell*, 317 N.E.2d 449, 451 (Ind. Ct. App. 1974) (finding notice sufficient when it "substantially complie[d] with the terms of the lease"); *First Nat'l Bank of Commerce v. DiRosa*, 545 So. 2d 692, 694 (La. Ct. App. 1989); *Equity Props. & Dev. Co. v. Entinger*, No. 188302, 1996 WL 33347540, at \*2 (Mich. Ct. App. Dec. 27, 1996) (citing *Gordon v. Great Lakes Bowling Corp.*, 171 N.W.2d 225 (Mich. Ct. App. 1969)); *Hil-Roc Condo. Unit Owners Ass'n v. HWC Realty, Inc.*, No. 87344, 2006 WL 2627553, at \*3 (Ohio Ct. App. Sep. 14, 2006) (citing *McGowan v. DM Grp. IX*, 455 N.E.2d 1052 (Ohio Ct. App. 1982)).

Although the majority approach seems the better one, we need not decide which of these lines of cases to follow because an additional wrinkle exists here: in this case, the district court specifically found that, notwithstanding Treasure Island's failure to strictly comply with the contractual notice requirements, Rose received actual notice anyway. A number of states that require strict compliance with notice requirements nonetheless recognize that, if a defaulting party received actual notice anyway despite some failure of strict compliance, then the failure resulted in no prejudice and therefore no breach to complain about. *See Jefferson Garden Assocs. v. Greene*, 520 A.2d 173, 183-84 (Conn. 1987); *Thompson v. Fairchild*, 468 P.2d 316, 318-19 (Idaho 1970); *Vole, Inc. v. Georgacopoulos*, 538 N.E.2d 205, 210-11 (Ill. App. Ct. 1989). These courts reason that "[s]trict construction does not . . . require ritualistic compliance with [notice requirements]." *Greene*, 520 A.2d at 183. Instead, the notice of termination "must reflect the purpose that the notices were meant to serve." *Id.* Thus, when actual notice is received and the defaulting party is fully aware of the

COURT OF APPEALS
OF
NEVADA

(O) 1947B

problem, how the notice was sent becomes immaterial. *See Thompson*, 468 P.2d at 319 (noting that whether formal requirements regarding notice were complied with is immaterial where it is clear that notice was in fact received); *Vole*, 538 N.E.2d at 210 (noting that provisions requiring a particular form of notice are only meant to ensure delivery). Whether the legal standard is characterized as "strict" or "substantial" compliance, the point is to ensure that the defaulting party actually receives the information to which it is entitled, not to penalize the noticing party for minor technical failures that caused no prejudice to any other party.

Because the district court found, as a factual matter, that Rose received actual notice of the default, for our purposes it matters little that Treasure Island failed to technically comply with the notice requirements agreed upon in the fifth amendment. Rose knew what it was entitled to know: that the quarterly rent payment had not been received in a timely manner, and consequently the notice of default was valid notwithstanding any failure of strict compliance. When the missing rent was not paid despite the giving of actual notice, Treasure Island became entitled to terminate the contract.

*Whether Señor Frog's is a necessary party under NRCP 19*

Quite apart from the notice issue, Rose argues that the judgment cannot stand because Treasure Island and the district court failed to join Señor Frog's as a necessary party under NRCP 19. Rose contends that Señor Frog's was a necessary party because it was a third-party beneficiary to the prime lease and also because Treasure Island sought a declaratory judgment that the lease was terminated, which would have affected Señor Frog's contractual rights under the sublease. Treasure Island counters that Rose is precluded from asserting this argument

because it failed to raise it below and Señor Frog's was not a necessary party in any event because it was not a party or a third-party beneficiary to the lease and any declaratory judgment would not affect any possible claim Señor Frog's may possess.

Generally speaking, the absence of an allegedly necessary party may be raised in one of two ways: it may be raised by the necessary party itself, or it may be raised by someone other than the allegedly necessary party (such as another party or the court). These two methods involve different procedures and deadlines. If an allegedly necessary party believes it has an interest in a pending action, it may seek to intervene in the action. *See* NRCP 24. On the other hand, if another party already present in the action desires to raise the issue on behalf of a missing party, it can do so by filing either a motion to dismiss the action pursuant to NRCP 12(b)(6), a motion for judgment on the pleadings pursuant to NRCP 12(h)(2) (which can be filed before trial or during trial), or a motion seeking to join the missing party under NRCP 19. Always, the substantive test for determining whether the absent party is necessary is governed by NRCP 19.

Here, Señor Frog's never made any effort to intervene in this action in order to protect its own interests. Quite to the contrary, upon learning of the termination, counsel for Señor Frog's emailed Treasure Island to state that Señor Frog's "is not affected by [the] default" and "[n]one of this will impact [it] adversely," thereby effectively disclaiming any interest in participating in the litigation. Therefore, the question raised in this appeal is not whether Señor Frog's may now intervene (something that it stated in writing that it did not want to do), but rather whether an existing party (Rose) may now seek to have the judgment reversed due to

Señor Frog's absence notwithstanding its lack of interest in being joined. This question, in turn, has two components: whether the absence of Señor Frog's can still be raised at this stage of the litigation and, if the answer to that is yes, whether Señor Frog's is a necessary party as defined by NRCP 19.

### A. Whether Rose has waived its right to challenge the absence of Señor Frog's

Treasure Island argues that Rose's challenge to the absence of Señor Frog's has been waived because nobody ever raised it below, citing a number of federal cases for the proposition that Rule 19 defects must first be asserted in district court or they are waived on appeal.

NRCP 19 is virtually identical to its federal counterpart and Nevada generally follows federal law when its procedural rules are similar. *See Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.*, 118 Nev. 46, 53, 38 P.3d 872, 876 (2002) (noting that where the NRCP parallel the Federal Rules of Civil Procedure, rulings of federal courts interpreting and applying the federal rules are persuasive authority for the appellate courts in applying the Nevada rules). However, the Nevada Supreme Court does not follow federal law when it comes to whether a challenge to the absence of a necessary party under Rule 19 may be waived.

In most federal courts, a challenge by one of the current parties asserting the absence of a necessary party is waived on appeal if not first raised before the district court through either an immediate motion to dismiss under FRCP 12(b)(7) filed at the pleading stage, or a subsequent motion under FRCP 12(h)(2) filed before the end of trial. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Mid-Continent Cas. Co.*, 518 F.2d 292, 294 (10th Cir. 1975); *Capital Fire Ins. Co. of Cal. v. Langhorne*, 146 F.2d 237, 242-43 (8th Cir. 1945); *but see Marvin v. Pflueger*, 280 P.3d 88, 98 (Haw. 2012)

Court of Appeals
of
Nevada

(O) 1947B

(noting that some federal courts question whether such a challenge can be waived). This approach is designed to prevent any party from using Rule 19 as something of an "ambush" tactic when the party knows that an absent party has not been joined but tactically chooses not to bring the matter to the court's attention until after it loses and then raises it belatedly for the first time on appeal in order to engineer a reversal on grounds it knew existed all along but purposely hid. *See Judwin Props., Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432, 434 (5th Cir. 1992) (finding "no authority for the offensive use of Rule 19 which would allow a plaintiff to negate an adverse ruling because of its own failure to join all indispensable parties"); *cf. Burka v. Aetna Life Ins. Co.*, 87 F.3d 478, 483 (D.C. Cir. 1996) (concluding that an appellant's conscious, tactical decision not to join a party at the beginning of the action militated against finding that the party was indispensable); *Arnold v. BLaST Intermediate Unit 17*, 843 F.2d 122, 125 n.6 (3d Cir. 1988) (applying the principle of laches to bar a Rule 19 argument where "[respondent] itself failed to join [a necessary party] despite ample opportunity"). However, this approach achieves this goal at the cost of accepting the risk of occasional piecemeal litigation separately initiated by the absent party.

Here, Treasure Island notes that Rose failed to challenge the absence of Señor Frog's below. Unlike federal courts, however, the Nevada Supreme Court has held that under NRCP 19 such challenges are not waivable and may be raised for the first time on appeal. *See Blaine Equip. Co. v. State, Purchasing Div.*, 122 Nev. 860, 864-66, 138 P.3d 820, 822-23 (2006); *Univ. of Nev. v. Tarkanian*, 95 Nev. 389, 395-96, 594 P.2d 1159, 1163 (1979); *Robinson v. Kind*, 23 Nev. 330, 338, 47 P. 1, 3-4 (1896).

The Nevada Supreme Court thus appears to prioritize slightly different policy interests than does the federal judiciary: avoiding the possibility of piecemeal litigation by permitting courts to attempt to join all necessary parties with any potential claim no matter when the question is raised. *See Tarkanian*, 95 Nev. at 397, 594 P.2d at 1164 ("A major objective of [NRCP 19(a)] is to have a final and complete determination of the controversy, not to determine issues piecemeal . . . .") (second alteration in original) (internal quotation marks omitted). However, it achieves this goal at the cost of potentially permitting parties to use Rule 19 as a tactical maneuver to engineer reversals by strategically waiting to see what the trial verdict is before asserting the issue for the first time on appeal. *See id.* at 396, 594 P.2d at 1163-64 (noting that a party should have been joined in the action because its ability to protect its interests would be impaired and further litigation of the controversy was likely absent joinder); *Young Inv. Co. v. Reno Club, Inc.*, 66 Nev. 216, 222, 208 P.2d 297, 300 (1949) (noting that the purpose of joining necessary parties "is to have a final and complete determination of a controversy, not to determine issues piecemeal but to avoid a multiplicity of suits").

Treasure Island asserts that, here, the risk of piecemeal litigation is nonexistent and the possibility of waste is high because Señor Frog's has expressed no interest in participating in the litigation despite having been involved in certain parts of it. Thus, it argues that all of the conditions for a waiver of Rule 19 are present and nothing useful will be achieved through a reversal other than to relitigate the trial, adding a new party that, as a practical matter, has no desire to be involved.

That may be so; there is evidence in the record suggesting that Treasure Island may be correct about Señor Frog's lack of interest, as the company's president testified during the trial as a witness, yet expressed no interest in intervening and displayed no distress that his company had been omitted from the action. More, after learning that the lease had been terminated, counsel for Señor Frog's expressly notified Treasure Island by email that it "is not affected by [Rose's] default" and "[n]one of this will impact adversely" Señor Frog's, which comes vanishingly close to an express written disclaimer of any interest that Señor Frog's might otherwise have possessed in the litigation. But even with that evidence, Nevada's interpretation of NRCP 19 prohibits a conclusion that Rose has legally waived its right to challenge the absence of Señor Frog's.

The next question is whether Señor Frog's is a necessary party under NRCP 19.

B. *Whether Señor Frog's is a necessary party under NRCP 19*

Under NRCP 19, a party is necessary if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

NRCP 19(a)(1). To feasibly join a party, that party must be subject to service of process and joinder must not deprive the district court of subject matter jurisdiction. *Id.* A party is considered indispensable "only when joinder of that party is not feasible." *Blaine*, 122 Nev. at 864 n.6, 138 P.3d at 822 n.6.

Whether a party is necessary does not depend upon broad labels or general classifications, but rather comprises a highly fact-specific inquiry. Rule 19 "calls for courts to make pragmatic, practical judgments that are heavily influenced by the facts of each case." *Bacardi Int'l Ltd. v. V. Suarez & Co.*, 719 F.3d 1, 9 (1st Cir. 2013) (citing 7 Charles Alan Wright et al., *Federal Practice & Procedure* § 1604 (3d ed. 2001)). "There is no precise formula for determining whether a particular nonparty must be joined under Rule 19(a)." *Knutzen v. Eben Ezer Lutheran Hous. Ctr.*, 815 F.2d 1343, 1356 (10th Cir. 1987) (quoting 7 Charles Alan Wright et al., *Federal Practice & Procedure* § 1604 (2d ed. 1986)).

Although Rule 19 "provides for joinder of necessary parties, it does not [itself] create a cause of action against them." *Davenport v. Int'l Bhd. of Teamsters, AFL-CIO*, 166 F.3d 356, 366 (D.C. Cir. 1999). Before a party may be joined under Rule 19, it "must have [its own cause of action against another party or] a cause of action against it." *Vieux Carre Prop. Owners, Residents & Assocs., Inc. v. Brown*, 875 F.2d 453, 457 (5th Cir. 1989).

Thus, in applying NRCP 19, we must first determine whether Señor Frog's has a legally valid claim against someone already in the litigation and/or whether someone already in the litigation has a legally valid claim against it. The answer to that question depends partly upon what legal relationship Señor Frog's bears to the other parties. Treasure

Island argues that Señor Frog's is nothing more than a mere subtenant. If Treasure Island is correct and Señor Frog's is only that, then the only claim it could possess would be against Rose. But Rose argues that Señor Frog's is not merely a subtenant but also a third-party beneficiary to the principal lease, and it therefore possesses claims against both Treasure Island and Rose.

### C. Whether Señor Frog's is merely a subtenant or is also a third-party beneficiary to the principal lease

Rose argues that Señor Frog's is not merely a subtenant, but rather something more: a third-party beneficiary to the lease between Treasure Island and Rose. A subtenant normally possesses a claim only against the prime tenant but not against the landlord, because subtenants generally have no rights vis-à-vis a prime lessor merely by virtue of the sublease because there exists no direct relationship of privity between the subtenant and the landlord. *See, e.g., Hornwood v. Smith's Food King No. 1*, 107 Nev. 80, 85, 807 P.2d 208, 212 (1991) (noting that landlords have no privity of contract or estate with subtenants and thus must rely upon prime tenants to maintain subleases). In contrast, a third-party beneficiary of a lease has privity with the landlord and therefore would possess a claim not only against the prime tenant but also against the landlord arising from the principal contract. *See Mercury Cas. Co. v. Maloney*, 6 Cal. Rptr. 3d. 647, 649 (Ct. App. 2003) ("[A] third party beneficiary's rights under [a] contract are not based on the existence of an actual contractual relationship between the [promisor and the third party beneficiary] but on the law's recognition that the acts of the contracting parties . . . established privity between the promisor and the third party beneficiary . . . ." (emphasis omitted)); *see also Wells v. Bank of Nev.*, 90 Nev. 192, 197, 522 P.2d 1014, 1017 (1974) ("Absent evidence of a third party beneficiary status, an assignment of contract

COURT OF APPEALS
OF
NEVADA

(O) 1947B

rights or a delegation of contract duties, [individuals have no] rights, duties or obligations under [an] agreement."). Because a third-party beneficiary's right to enforce a contractual promise depends upon the continued validity of the contract itself, *see Principal Mut. Life Ins. Co. v. Vars, Pave, McCord & Freedman*, 77 Cal. Rptr. 2d 479, 489 (Ct. App. 1998), the beneficiary may be a necessary party to an action threatening rescission of the contract. *See Jordan v. Paul Fin., LLC*, 644 F. Supp. 2d 1156, 1172 (N.D. Cal. 2009) ("All parties to a contract and others having a substantial interest in it should be joined in an action to rescind or set aside the contract." (internal quotation marks omitted)).

A person or entity is a third-party beneficiary to a contract, even without signing it, when (1) there "clearly appear[s] a promissory intent to benefit the third party" and (2) "the third party's reliance thereon [wa]s foreseeable." *Lipshie v. Tracy Inv. Co.*, 93 Nev. 370, 379, 566 P.2d 819, 824-25 (1977); *cf.* Restatement (Second) of Contracts § 302 (Am. Law Inst. 1979) (stating that third-party beneficiary status exists where (1) the recognition of the beneficiary's right to performance is "appropriate to effectuate the intention of the parties [to a contact]," and (2) either the performance "will satisfy an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance"). Whether a party is an intended third-party beneficiary "depends on the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered." *Canfora v. Coast Hotels & Casinos, Inc.*, 121 Nev. 771, 779, 121 P.3d 599, 605 (2005) (internal quotation marks omitted).

Here, the fifth amendment expressly states that the new notice provisions were "for the benefit" of Señor Frog's. Rose focuses principally upon this language, arguing that it evidences the clear intention that Señor Frog's be a third-party beneficiary. But viewed as a whole, a fair reading of the lease indicates that it was not the intention of Treasure Island and Rose to treat Señor Frog's as both a subtenant under one contract (the sublease) and also simultaneously a third-party beneficiary with independent rights under another contract (the prime lease).

As a threshold matter, it's far from clear that Rose can properly defend its own default by asserting that the nondefaulting party failed to give notice to a supposed third-party beneficiary other than Rose; that argument belongs to the third-party beneficiary, not to Rose. That aside, although the fifth amendment provides for notice to Señor Frog's, it does not provide Señor Frog's with any right, in response to such notice, to cure a default triggered by any other party. Accordingly, the failure to give notice by itself would give Señor Frog's no independent cause of action against either Treasure Island or Rose that would meet the requirements of NRCP 19. *Cf. Vision Aviation, LLC v. Airport Auth. for Airport Dist. No. 1 of Calcasieu Par.*, 33 So. 3d 423, 426-28 (La. Ct. App. 2010) (holding that a mortgagee of leased property was a third-party beneficiary of the lease—and therefore a necessary party to an action threatening its termination—because it provided the mortgagee a right to cure the lessee's default). Without such a right to cure, a serious question exists as to whether the notice provision is in any way material to the lease as a whole.

Structurally, the relationship encapsulated by the lease was a commercial transaction in which everybody hoped to make money, and in order to do so Señor Frog's had to hold up its end of the bargain and operate

a profitable restaurant and pay rent regularly and on time. If it failed to do so, then under the terms of the sublease Rose could evict it and find a higher-paying subtenant instead. The overarching design of the agreement hardly evinces an intention that if Señor Frog's was evicted from the premises for breaching the sublease, it would somehow still retain rights under the prime lease between Treasure Island and Rose even after Rose found another subtenant to take its place. Indeed, the very fact that Rose could unilaterally evict Señor Frog's from the premises for nonperformance without the agreement or knowledge of Treasure Island demonstrates that the primary lease was not intended to exist just for the benefit of Señor Frog's. To the contrary, neither Treasure Island nor Rose signed the primary lease only to benefit Señor Frog's for its own sake regardless of how its restaurant performed or whether or not Señor Frog's complied with the sublease. The situation at hand does not meet the legal definition of a third-party beneficiary, and Señor Frog's is therefore a mere subtenant and not a third-party beneficiary of the primary lease.

*D. Whether Señor Frog's, as a subtenant, was a necessary party*

As a subtenant, Señor Frog's has a relationship of privity with Rose but not with Treasure Island. The next question is whether that is enough to make Señor Frog's a necessary party.

NRCP 19 asks whether complete relief can be accorded to all current parties without the absent party and/or whether the absent party "claims an interest" in the action. How we analyze these two inquiries depends upon how the question of necessity came before us. Had the question of Señor Frog's absence been raised by Señor Frog's itself through an attempt to intervene in the action, we would start by analyzing the scope of the interest it claims to have in the action. *See* NRCP 24(a)(2). Had

Señor Frog's sought intervention, an argument could perhaps be made that it is indeed a necessary party to an action between the landlord and the prime tenant because "when a prime lease falls, so does the sublease." *In re 48th St. Steakhouse, Inc.*, 835 F.2d 427, 430 (2d Cir. 1987) (internal quotation marks omitted); *see Syufy Enters., L.P. v. City of Oakland*, 128 Cal. Rptr. 2d. 808, 818 (Ct. App. 2002) ("rejection of a . . . master lease effectively terminates an attached sublease as well, thus extinguishing the subtenant's right to possession of the premises"). On the other hand, however, because a sublease cannot exist without a prime lease, Rose's interest in defending the prime lease means that in many cases it likely could adequately defend Señor Frog's interest in the sublease. *Cf.* NRCP 24(a)(2) (providing that intervention of right is unavailable where "existing parties adequately represent [the would-be intervener's] interest").

But when the question of an absent party's necessity is raised by a party other than the missing one, that inquiry becomes less critical. This is especially so when, as here, the absent party knows about the action but has made no effort to intervene, because its lack of interest suggests that in truth it may not really fear impairment of its rights. *See Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043-44 (9th Cir. 1983) (declining to order joinder of an entity that knew of the action yet "never asserted a formal interest in either the subject matter of th[e] action or the action itself" and instead opted to "observe[ ] a neutral and disinterested posture"). Moreover, as a practical matter, when an absent party chooses not to intervene, its absence frequently deprives courts of the very information most essential to determining whether the party does or does not possess a valid interest in the litigation. "It is the absent party that must claim an interest," and another party's attempt to assert a nonparty's

interest "falls outside the language of the rule." *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996) (internal quotation marks omitted). Accordingly, when the question of necessity is raised by another party already present in the action rather than by the missing party itself, Rule 19 focuses principally upon whether complete relief can be accorded among the parties already present.

"Completeness is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought." *Humphries v. Eighth Judicial Dist. Court*, 129 Nev. 788, 796, 312 P.3d 484, 490 (2013) (quoting *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir. 1996)). "[T]he court must decide if complete relief is possible among those already parties to the suit. This analysis is independent of the question whether relief is available to the absent party." *Id.* (alteration in original) (emphasis omitted) (quoting *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990)).

To answer this inquiry, we look to the nature of "the pleadings as they appear at the time of the proposed joinder." *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1124 (2d Cir. 1990) (quoting 7 Charles Alan Wright et al., *Federal Practice & Procedure* § 1604 (2d ed. 1986)). Moreover, completeness is measured by the claims and defenses already asserted in the litigation rather than hypothetical claims or defenses that other parties could have raised but did not; under Rule 19, parties "are not required to anticipate [the opposing party's claims] and join all parties that may be necessary for the [opposing party]'s benefit." *Halpern v. Rosenbloom*, 459 F. Supp. 1346, 1354 (S.D.N.Y. 1978). In contract disputes, "[c]ontroversies arising under an agreement properly are to be determined and settled by parties to the agreement or their assigns,

that is, by those who have legal rights or duties thereunder." *Wells*, 90 Nev. at 197, 522 P.2d at 1017.

In this case, Treasure Island could, and did, obtain complete relief despite the absence of Señor Frog's. Treasure Island sought termination of the prime lease based upon Rose's default, relief that the district court granted. Conversely, Rose sought a declaration nullifying the termination of the lease, relief that the district court denied. The presence or absence of Señor Frog's in the litigation through its own sublease played no role in the district court's decision regarding whether Rose defaulted in its obligations under the prime lease. Señor Frog's appears legally irrelevant to any claim that Treasure Island and Rose asserted against each other, and Señor Frog's said as much in its own email indicating that it "is not affected" by Rose's default.

Unlike Treasure Island, Rose has a relationship of privity with Señor Frog's. But it is Rose, not Señor Frog's, who is accused of breaching the lease, and it is Treasure Island, not Señor Frog's, who is accused of wrongfully terminating the lease. As far as we know, Señor Frog's has done nothing wrong that would create a claim against it by anyone. Rose therefore appears to have no claim it could assert against Señor Frog's. If evicted, Señor Frog's may have a claim against Rose, but Rose does not argue that it possesses any claim against Señor Frog's; Rose's only claims are against Treasure Island.

Consequently, complete relief can be accorded to both Treasure Island and Rose without needing to join Señor Frog's. Nothing about the disposition of the action in favor of Treasure Island impairs the ability of Señor Frog's to seek relief against Rose or leaves either Treasure Island or

Rose subject to double, multiple, or otherwise inconsistent obligations. Señor Frog's is therefore not a necessary party under NRCP 19.

It's possible that Rose may be the target of separate litigation brought by Señor Frog's under the sublease. But even if that is true, that would not subject Rose to any judgment inconsistent with the relief granted through this litigation. If Rose defaulted on its prime lease (as the district court concluded), then it likely also breached its obligations toward Señor Frog's under the sublease. Those are two independent breaches of two different contracts, and neither is inconsistent with the other. Adjudicating Rose liable for both breaches would result in multiple judgments against Rose, but not judgments that are in any way inconsistent with each other.

Moreover, even if some inconsistency could arise, that is Rose's own fault. In this appeal, it is Rose who seeks to overturn the judgment by arguing the absence of Señor Frog's. But the only likely claim that could involve Señor Frog's in any way would be a claim by Señor Frog's against Rose for breach of the sublease. Thus, the only party in this action that could suffer from multiple actions from the failure to join Señor Frog's is Rose, a problem that Rose itself could have easily rectified by simply joining Señor Frog's. Rose was the only party that had any incentive to do so, because it was the only party that could have been the target of any claim by Señor Frog's.

Yet Rose never mentioned this potential problem until raising it for the first time in this appeal. Rose effectively seeks to overturn a judgment based upon the absence of a party that only it had any reason to join. This raises the possibility that, in reality, Rose may not be all that concerned about any threat of piecemeal litigation from Señor Frog's for, if it was, one would think that it would have done everything it could to

protect itself from the outset from every claim it feared might be filed.[3] *Cf.*
*Northrop Corp.*, 705 F.2d at 1044.

The ultimate goal of NRCP 19 is to promote efficiency and conserve judicial resources by reducing duplicative and piecemeal litigation and avoiding potentially inconsistent outcomes. *See Univ. of Nev. v. Tarkanian*, 95 Nev. 389, 397, 594 P.2d 1159, 1164 (1979). That goal is poorly served if a party is allowed to make a tactical decision to refrain from timely bringing a known defect in the trial to the court's attention that it then uses on appeal to try to force the court to conduct the same trial twice. Quite to the contrary, allowing a party to procure reversal based upon the

---

[3]Rose's inaction appears especially telling when it was intimately familiar with Señor Frog's personnel, business operations, and how to contact them, because the two businesses started off as partners under the original lease and only later (by the time of the fifth amendment) converted their relationship into the more distant status of subtenancy. Under these circumstances, waiting to raise this issue until so late in the day conveys the impression that Rose is trying to benefit from its own trial decision and thereby obtain reversal based upon something resembling invited error.

> The doctrine of "invited error" embodies the principle that a party will not be heard to complain on appeal of errors which he himself induced or provoked the court or the opposite party to commit. It has been held that for the doctrine of invited error to apply it is sufficient that the party who on appeal complains of the error has contributed to it. In most cases application of the doctrine has been based on affirmative conduct inducing the action complained of, but occasionally a failure to act has been referred to.

*Pearson v. Pearson*, 110 Nev. 293, 297, 871 P.2d 343, 345 (1994) (quoting 5 Am. Jur. 2d *Appeal and Error* § 713 (1962)).

COURT OF APPEALS
OF
NEVADA

(O) 1947B

absence of an entity that only it had any reason to join would set the dangerous precedent of permitting litigants to reduce trials to mere practice runs by manufacturing a "win-win" situation under which it either prevails at trial or has an easy Plan B for appeal if it loses. That can hardly have been the intention of the framers of NRCP 19.

In this case, both Treasure Island and Rose can procure complete relief in their claims against each other without joining Señor Frog's. But even if Rose suffered some detriment from not having Señor Frog's in the litigation, it bears responsibility for the situation. Whatever Rose's subjective intent might have been in failing to join Señor Frog's (whether it resulted from mere oversight or a tactical plan), its inaction created the very problem that it now argues compromised the verdict below. And even to the extent Señor Frog's suffered any prejudice arising from the termination of the agreement, its lack of interest in participating in this lawsuit indicates that it was willing to live with whatever prejudice it may have suffered. Consequently, Señor Frog's is not a necessary party and Rose is not entitled to relief.[4]

---

[4]In their briefing and during oral argument, the parties did not explicitly address NRS 30.130, which identifies who must be joined in an action seeking only declaratory relief. Under that statute, "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." When a relevant party is not so joined, the district court should allow the plaintiff to amend his or her complaint to join the party or it should "effectuate[ ] the amendment *sua sponte*." *Crowley v. Duffrin*, 109 Nev. 597, 603, 855 P.2d 536, 540 (1993). In *Crowley*, the supreme court remanded the case for the district court to join parties required to be joined under NRS 30.130 and then enter a declaratory judgment. *Id.* at 606, 855

## CONCLUSION

For the foregoing reasons, we conclude that Rose suffered no prejudice as it received actual notice of the default, and we conclude that, under the circumstances of this case, Señor Frog's was not a necessary party

---

P.2d at 542. In this case, however, we do not think it necessary to remand for the district court to join Señor Frog's in that manner for the following reasons. As an initial matter, the Uniform Declaratory Judgments Act "is directed only to those who enjoy *a legal interest in the agreement under scrutiny.*" *Wells v. Bank of Nev.*, 90 Nev. 192, 197-98, 522 P.2d 1014, 1017-18 (1974) (emphasis added). Here, because Señor Frog's was not a party or third-party beneficiary to the agreement between Treasure Island and Rose, it had no legal interest in that agreement. *See Wells*, 90 Nev. at 197, 522 P.2d at 1017 (concluding that because the appellants were not parties, third-party beneficiaries, assignees, or delegees with respect to the underlying agreement, they had no rights, duties, or obligations under it, and therefore, could not challenge it via a declaratory-judgment action). As a subtenant, its only interest derived from Rose's interest. *See Gasser v. Jet Craft Ltd.*, 87 Nev. 376, 382, 487 P.2d 346, 350 (1971) (noting that a "sublease" is generally defined as a lease "executed by the lessee of an estate to a third person, conveying the same estate for a shorter term than that for which the lessee holds it" (internal quotation marks omitted)); *see also In re J.T. Moran Fin. Corp.*, 124 B.R. 924, 925 (Bankr. S.D.N.Y. 1991) ("The creation of a sublease depends upon the continuing viability of a prime lease, so that the rejection of the prime lease also results in the rejection of the sublease."). Thus, Señor Frog's was not a party that needed to be joined under NRS 30.130. Accordingly, when Rose's interest was validly extinguished (because it is a party to this case), so too was the subordinate sublease, regardless of Señor Frog's absence.

under NRCP 19 whose absence from the litigation compels reversal, and we therefore affirm.[5]

_____, J.
Tao

We concur:

_____, C.J.
Gibbons

_____, J.
Bulla

---

[5]We have carefully considered all of Rose's other arguments on appeal and conclude that they are without merit.